Donald STROUP, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

The PEOPLE of the State of
Colorado, Petitioner,

v.

Donald STROUP, Respondent.

Nos. 81SC15, 80SC362.

Supreme Court of Colorado,
En Banc.

Dec. 27, 1982.

Marks & Olom, Jonathan L. Olom, Denver, for Donald Stroup.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for The People of the State of Colorado.

LOHR, Justice.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *People v. Stroup*, 624 P.2d 913 (Colo.App. 1980), affirming the trial court's denial of the defendant's motions under Crim.P. 35(b) to set aside his conviction for first degree assault. We hold that, as the defendant contends, his constitutional right to the effective assistance of counsel has been violated. Accordingly, we reverse the judgment of the court of appeals and direct that the case be remanded for resentencing.

After a jury found the defendant, Donald Stroup, guilty of first degree assault, section 18–3–202(1)(a), C.R.S.1973 (1978 Repl. Vol. 8), and determined that it was a crime of violence, section 16–11–309, C.R.S.1973 (1978 Repl.Vol. 8) (1982 Supp.), the Mesa County District Court sentenced him to a term of fifteen to twenty years imprisonment. The defendant did not appeal. Several months later Stroup filed a *pro se* motion pursuant to Crim.P. 35(b)[1] seeking to set aside his conviction, and thereafter the public defender filed an additional motion under that rule on the defendant's behalf. The grounds alleged for relief were, among others, that the defendant had been denied effective assistance of counsel contrary to the guarantees in the United States and Colorado Constitutions and that the trial court erred in submitting the crime of violence count to the jury at the same time as the assault count.

After hearing, the trial court initially granted the defendant's motions on the ground that he had been denied effective assistance of counsel, and ordered a new trial. The People moved for reconsideration of the new trial order based on newly discovered evidence, and the trial court set that motion for hearing. After taking additional evidence, the trial court rescinded its prior findings, revoked its order granting a new trial, and denied the Crim.P. 35(b) motions. The defendant appealed.

The Colorado Court of Appeals held that the defendant had received clearly erroneous advice from his counsel in connection with his decision not to appeal his conviction but concluded that the judgment should not be reversed because Stroup had shown no meritorious ground for appeal. However, the court of appeals vacated the sentence and remanded for resentencing on the first degree assault conviction alone, without increased punishment for a crime of violence, holding that the trial court committed error in failing to submit a special interrogatory to the jury on the crime of violence sentencing allegation. *People v. Stroup, supra.*

We granted certiorari petitions filed by the defendant and the People to consider the issues of whether the defendant was

---

1. Crim.P. 35 was amended subsequent to the time the defendant's motions were filed. Postconviction remedies provided for in former Crim.P. 35(b) now appear in Crim.P. 35(c), C.R.S.1973 (1982 Supp.).

denied the effective assistance of counsel and whether the trial court erred in submitting a general verdict form to the jury on the violent crime count. We hold that the defendant had a meritorious ground for appeal but that he was deprived of effective assistance of counsel in connection with his decision whether to pursue an appeal. We remand for resentencing under the sentencing guidelines for second degree assault to correct the effect of prejudicial evidence erroneously received. Additionally, we find that the defendant was not prejudiced by the trial court's use of a general verdict form on the crime of violence count and that the special interrogatory requirement should not be applied retroactively in this case.

## I.

The charges against the defendant stem from an assault on his ex-wife committed during the early morning hours of April 17, 1977. On that morning, the defendant broke into the victim's home and held her and their three children captive for several hours. During this time he brutally and continually assaulted his ex-wife with his hands, feet, and a butcher knife, while the children were required to watch. The defendant rubbed salt into his ex-wife's wounds and forced one of the children to do so also. During the course of the assault, Stroup threatened the victim several times that he would kill her. The victim suffered numerous painful bruises, cuts and contusions, but eventually recovered from her injuries.

Stroup was charged with first degree assault and commission of a crime of violence, and he retained counsel for his defense. At the Crim.P. 35(b) hearing the defendant's trial counsel gave the following account of his litigation strategy. Prior to trial, the district attorney offered to lower the charge to second degree assault in exchange for the defendant's plea of guilty. Defense counsel discussed his assessment of the case with Stroup and his brother, and they jointly decided not to accept the plea bargain. The central consideration in this decision apparently was counsel's evaluation that, in going to trial, the defendant ran only a minimal risk of conviction for first degree assault because the prosecution would be unable to prove the essential element of "serious bodily injury" to the victim. Defense counsel believed that a conviction for second degree assault was the likely outcome at trial, but that a third degree assault conviction was possible if the jury credited Stroup's proposed testimony that a knife wound between the victim's eyes occurred by accident.

Defense counsel hoped to cross-examine the state's medical experts effectively at trial but did not plan to present independent medical evidence. He made this decision primarily because of his belief—formed without consulting medical experts—that the prosecution could not prove serious bodily injury. At trial, the prosecution's principal medical witness testified on direct examination that the stab wound to the victim's forehead involved a substantial risk of death. Over defense counsel's strenuous objection, the doctor was allowed to state this opinion and to testify that it was based on the fact that the knife could have entered the victim's brain had the point of impact been only a fraction of an inch to the left or right of the actual wound. Defense counsel argued to the court, out of the hearing of the jury, that such testimony was not relevant to the issue of whether the victim suffered serious bodily injury within the statutory definition. Stroup's attorney was also surprised by the doctor's further testimony on direct examination that the victim had suffered shock involving a substantial risk of death, but defense counsel did not seek a continuance in order to obtain a medical expert to rebut this evidence.

At the close of evidence, the trial court instructed the jury on the elements of first degree, second degree, and third degree assault, and on the definitions of "serious bodily injury" and "bodily injury." The court also instructed the jury on the meaning of a "crime of violence" under section 16–11–309. The jury was given two general verdict forms, and returned verdicts of

guilty of first degree assault and committing a violent crime. The defendant was then sentenced pursuant to the sentencing guidelines in the violent crime statute.

After conviction and sentencing, defense counsel discouraged Stroup from appealing[2] even though the attorney was firmly of the opinion that the trial court had committed reversible error by overruling his objection to the doctor's testimony about the consequences to the victim if the knife wound to the forehead had been in a slightly different location. Counsel advised his client, however, that an appellate court would be unlikely to reverse his conviction because the defendant was a very unsympathetic candidate for a new trial due to the shocking nature of the crime committed.[3]

## II.

In reviewing the trial court's denial of Stroup's Crim.P. 35(b) motion, the court of appeals held that, while the defendant received adequate representation at trial, his attorney gave him clearly erroneous advice when he told Stroup that he was unlikely to be successful on appeal because of the nature of the crime. However, the court did not grant a new trial because the defendant had not shown that a meritorious ground for appeal existed sufficient to justify the granting of postconviction relief pursuant to Crim.P. 35(b). The court held that, while the alleged error in admitting the testimony

of the state's medical expert constituted a meritorious ground for appeal on its face, the evidence concerning the victim's condition of shock was independently sufficient to support the defendant's conviction of first degree assault.

 We agree with the court of appeals that the defendant was denied the effective assistance of counsel[4] when his attorney advised him that his conviction probably would not be reversed despite the trial court's error. However, we do not agree with the analysis that this constitutional error was harmless. For this reason the judgment of the court of appeals must be reversed and, as developed later in this opinion, we conclude that the appropriate remedy is to remand for resentencing for second degree assault and crime of violence. We do not reach the question of whether the defendant was denied the effective assistance of counsel during the course of the trial.[5]

## A.

 The defendant's right under the Sixth Amendment to the United States Constitution to the assistance of counsel in defending against a criminal charge requires that he receive "the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." *People v. Jacobs,* 198 Colo. 75, 79, 596 P.2d 1187, 1189 (1979) (quoting from *United States v. DeCoster,* 487 F.2d 1197, 1202 (D.C.Cir.

---

**2.** In the course of extensive questioning of Stroup's trial attorney at the Crim.P. 35(b) hearing as to the advice he had given his client about a possible appeal, the lawyer was asked directly whether it was his advice that Stroup not appeal. He replied, "I could very well have told him that."

**3.** Defense counsel testified, "I explained to [Stroup] if a court would look at [the record] and believe what was said about him they could conclude that he's a bad person and say, well, any error was not substantial and we are not going to reverse."

**4.** The court of appeals appears to hold that counsel's critical erroneous advice deprived the defendant of effective assistance of counsel although it does not state this explicitly.

**5.** The defendant's claim of ineffective assistance of counsel during trial centers on the manner in which trial counsel defended on the "serious bodily injury" element of first degree assault. Nothing of record suggests, nor does the defendant argue, that counsel's representation during trial was less than effective on the other critical elements of first degree assault, *i.e.,* the intent to cause serious bodily injury and the use of a deadly weapon, or on the lesser offense of second degree assault. Under these circumstances, our reversal of the defendant's first degree assault conviction because of ineffective assistance of counsel in connection with the defendant's appellate rights renders it unnecessary to address the defendant's claim of ineffective assistance of counsel during trial.

1973)). *Colo. Const.* Art. II, § 16, requires no less. This constitutional right extends to counsel's assistance and advice with regard to the pursuit of appeal rights made available by state procedure. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *see People v. Stephenson,* 187 Colo. 120, 528 P.2d 1313 (1974). The quality of advice must be "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773 (1970);[6] *People v. Blalock,* 197 Colo. 320, 324, 592 P.2d 406, 408 (1979).

In the present case, defense counsel's advice to the defendant with respect to the advisability of an appeal clearly fell outside the range of reasonably competent assistance. The attorney's statement to the defendant that his conviction probably would not be reversed if the defendant were perceived as a "bad person" is legally incorrect. Stroup's attorney believed at the time he gave this advice and at the time of the Crim.P. 35(b) hearing that reversible error had been committed by the trial court. To render reasonably effective assistance, an attorney must at a minimum advise the defendant of possible grounds for appeal that counsel deems meritorious,[7] without interjecting extraneous considerations. The defendant's attorney fell short of this standard and Stroup's right to counsel under the federal and state constitutions was infringed.

### B.

In considering whether the defendant is entitled to postconviction relief under Crim.P. 35(b) for denial of his right to appeal due to ineffective assistance of counsel, the court of appeals correctly held that the defendant must show that some meritorious ground for appeal exists. In *Haines v. People,* 169 Colo. 136, 454 P.2d 595 (1969), we held that a defendant whose right to appeal has been frustrated may obtain relief under Crim.P. 35(b) only upon a showing of meritorious grounds for appellate review unless defense counsel committed fraud, deception, or express breach of an agreement to prosecute an appeal. While the issue of ineffective assistance of counsel apparently was not before the court in *Haines v. People,* the underlying reason for the infringement of the right to appeal should not make a difference in considering whether postconviction relief should be granted. Society has an interest in the finality of court determinations that should not be lightly put aside. *See People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973). Adequate weight will be given to that interest, while fully preserving the defendant's constitutional right to effective assistance of counsel, by a rule that in order to obtain Crim.P. 35(b) review of asserted trial court errors not of constitutional dimension where an appeal from a judgment of conviction was not taken because of ineffective assistance of counsel, the defendant must demonstrate a ground for appeal that has probable merit, *i.e.,* that is not facially frivolous. We so hold.

Once the defendant has shown a right to postconviction relief, Crim.P. 35(b) gives the trial court discretion to "make such orders as may appear appropriate to restore a right which was violated." In fashioning a just remedy, the court's discretion should be guided by the competing considerations of the defendant's rights and society's interests.

**6.** The United States Supreme Court recognized the difficulty of attempting to formulate a standard for competence of counsel that would apply to the many and varied contexts in which the issue is encountered. In *McMann v. Richardson, supra,* the court stated that the trial court's discretion in determining the bounds of reasonably effective assistance in a case where counsel's advice is based on a prediction of the probable outcome of the defendant's case should be guided by the competing considerations that such forecasts are inherently uncertain but that the defendant cannot constitutionally be left to the mercies of incompetent counsel. 397 U.S. at 771, 90 S.Ct. at 1449, 25 L.Ed.2d at 773. Specific guidance is also available in *United States v. DeCoster, supra,* relying on American Bar Association Standards. *See ABA, Standards for Criminal Justice, The Defense Function,* §§ 4–1.1 through 4–8.6 (2d ed. 1982). *See also People v. Blalock, supra.*

**7.** *See ABA, Standards for Criminal Justice, The Defense Function,* § 4–8.2 (2d ed. 1982).

■ Our consideration of the alleged error advanced by the defendant's trial counsel as a meritorious ground for appeal persuades us that not only is it facially valid but also that it constitutes prejudicial error by the trial court.[8] The defendant, therefore, is entitled to postconviction relief under Crim.P. 35(b). Our review of the record also establishes that the only prejudice resulting to the defendant from the trial court's erroneous admission of evidence was an increased chance that the jury would find the defendant guilty of first degree assault rather than second degree assault. Accordingly, we find that the most appropriate remedy in this case is remand to the trial court for resentencing under the penalty provisions for second degree assault.

### C.

■ The asserted error that the defendant would have us address is the admission of testimony by the state's medical expert about the consequences that would have followed if the stab wound to the victim's forehead had been in a slightly different location. The defendant was charged and convicted under the following subsection of the first degree assault statute:

A person commits the crime of assault in the first degree if:

(a) With intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon....

Section 18–3–202(1)(a), C.R.S.1973 (1978 Repl.Vol. 8). "Serious bodily injury" is defined in section 18–1–901(3)(p), C.R.S. 1973 (1978 Repl.Vol. 8) as

bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body.

In contrast, the legislature provided that second degree assault is committed if the

defendant has intent to cause serious bodily injury and *causes such injury* (without a deadly weapon), section 18–3–203(1)(a), C.R.S.1973 (1978 Repl.Vol. 8), or if the defendant has intent to cause bodily injury and he *causes such injury* by means of a deadly weapon, section 18–3–203(1)(b). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical or mental condition." Section 18–1–901(3)(c).

The plain language of the "serious bodily injury" and "bodily injury" definitions focuses on the injury the victim actually suffered rather than the risk to the victim posed by the defendant's conduct.[9] This conclusion is supported by another section of the first degree assault statute, not charged in this prosecution, that clearly distinguishes between the degree of risk posed by a defendant's conduct and the resulting injury:

A person commits the crime of assault in the first degree if:

\* \* \* \* \* \*

(c) Under circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person....

Section 18–3–202(1)(c), C.R.S.1973 (1978 Repl.Vol. 8).

We have previously held that this statutory scheme distinguishes between the degrees of assault based upon whether the injury was inflicted by means of a deadly weapon and whether the victim's injuries were so severe as to constitute "serious bodily injury" under the statutory definition. *People v. Martinez,* 189 Colo. 408, 540 P.2d 1091 (1975). We analyzed the difference between "serious bodily injury" and "bodily injury" in *People v. Martinez,* and stated that "[t]he basic element is injury to a person's body, the difference being one of

---

8. Although only portions of the trial court record in the proceedings that resulted in the defendant's conviction are before us, they are adequate to review the issue presented.

9. We have held that the statutory language "substantial risk of" applies to "death" but not to "serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." *People v. Sheldon,* 198 Colo. 519, 602 P.2d 869 (1979).

the degree of the injury." *Id.* at 411, 540 P.2d at 1094.

At the defendant's trial, the prosecution's medical expert was allowed to testify that the stab wound to the victim's forehead created a "substantial risk of death" because the knife would have penetrated the brain had the point of entry been a fraction of an inch to the right or left. In argument outside the presence of the jury, after defense counsel objected to eliciting this opinion, the prosecution argued for its admission solely on the basis that it was relevant to prove that the victim suffered serious bodily injury. While such testimony as to the gravity of the risk created by the defendant's conduct may be relevant as circumstantial evidence of his intent to inflict serious bodily injury,[10] such evidence is irrelevant to prove that the defendant's acts caused a substantial risk of death to the victim based on the actual injuries inflicted. The trial court, therefore, erred in allowing this testimony to be considered by the jury, over defense counsel's objection, in determining whether the victim suffered serious bodily injury.[11]

The court of appeals held that admission of this evidence was harmless because other evidence that the victim suffered shock was sufficient to establish serious bodily injury. We disagree with this reasoning. In considering whether the element of serious bodily injury to the victim was established, the jury was free to accept or to reject any or all of the state's medical evidence. There is no way to determine from the record whether the jury relied on the competent evidence, the erroneously received evidence, or both in finding serious bodily injury. Therefore, the trial court's admission of the doctor's testimony that the victim's injuries posed a substantial risk of death was prejudicial to the defendant by imposing a greater risk of conviction of first degree assault, with its higher penalty provision, rather than second degree assault.

Our review of the record shows that, even excluding the erroneously admitted testimony, overwhelming evidence exists that the victim did suffer "bodily injury" as defined by section 18–1–901(3)(c). The defendant asserts only that his attorney rendered ineffective assistance at trial in the way he handled the serious bodily injury element of first degree assault. Additionally, the trial court's incorrect ruling on the serious bodily injury evidence was the only asserted meritorious ground for appeal affected by counsel's ineffective assistance in giving erroneous advice with regard to the defendant's appeal rights. Given the lack of disputed evidence on other elements of the first degree assault charge, the jury's verdict of guilty of first degree assault necessarily included a determination that all essential elements of the lesser offense of second degree assault had been established, even if the erroneously admitted evidence had been excluded from their consideration. Accordingly, in applying our discretion under Crim.P. 35(b) to fashion an appropriate postconviction remedy, we find that remand for resentencing under the penalty provisions for second degree assault will rectify the prejudice the defendant suffered as a result of denial of his right to effective assistance of counsel.

### III.

■ The court of appeals upheld the trial court's judgment of conviction but vacated the defendant's sentence and remanded for resentencing because the trial court erred in submitting a general verdict form to the jury on the violent crime charge under section 16–11–309 rather than submitting a special interrogatory form to the jury as required by *People v. Grable,* 43 Colo.App. 518, 611 P.2d 588 (1979). We recognize that

---

10. Evidence of the gravity of the risk created by a defendant's conduct is also relevant to the issue of whether such conduct falls within the ambit of first degree assault as defined by section 18–3–202(1)(c), discussed above.

11. It is apparent from the court's ruling that it viewed the evidence as admissible on the issue of serious bodily injury, so any request for a limiting instruction would have been unavailing.

the defendant's claim is cognizable as a ground for postconviction relief under Crim.P. 35(b),[12] but we do not agree with the court of appeals that remand for resentencing without enhanced punishment under the violent crime statute is an appropriate remedy in this case. In *People v. Swanson*, 638 P.2d 45 (Colo.1981), involving an appeal from a conviction rather than a request for postconviction relief, we held that the special interrogatory requirement would not be applied retroactively in cases tried before *People v. Grable, supra,* under circumstances indicating that the defendant has suffered no prejudice as a result of the trial court procedure. In the present case, the jury's verdict of guilty of first degree assault under section 18–3–202(1)(a) necessarily included a finding that the defendant used a deadly weapon in the commission of the crime. We extend the holding of *People v. Swanson* to the area of postconviction relief, noting that remand for resentencing on this ground is even less appropriate in the present context where the additional societal interest in finality of judgments comes into play.

We reverse the judgment of the Colorado Court of Appeals and return the case to that court for remand to the trial court for resentencing under the statutorily defined penalties for second degree assault and commission of a violent crime.

---

12. One of the grounds for postconviction relief is "[t]hat the conviction was obtained or sentence imposed in violation of the constitution or laws of the United States or the constitution or laws of this State." Crim.P. 35(b)(1)(I), C.R.S.1973.