**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Roy NORMAN, Defendant-Appellant.**

**No. 83SA290.**

Supreme Court of Colorado,
En Banc.

June 10, 1985.

Rehearing Denied Aug. 19, 1985.

**1264**

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Lee Jay Belstock, Denver, for defendant-appellant.

KIRSHBAUM, Justice.

Defendant, Roy J. Norman, appeals convictions of harassment,[1] felony theft,[2] first degree criminal trespass,[3] attempt to influence a public servant[4] and two counts of offering a false instrument for recording,[5] following a trial to the court. Because defendant asserts that section 18–9–111(1)(d), 8 C.R.S. (1978), violates provisions of the United States and Colorado Constitutions, the appeal has been transferred to this court. *See* §§ 13–4–102(1)(b), –110(1)(a), 6 C.R.S. (1973). We affirm in part and reverse in part.

**I**

This case has its origins in 1969, when defendant, an Internal Revenue Service (IRS) revenue officer, and Edytha Lesuer (Lesuer), an IRS group clerk, became good friends. Defendant counseled Lesuer concerning her work and her personal life, and they and their spouses jointly participated in social activities.

In March 1978, the East Continental Industrial Bank (the bank) instituted foreclosure proceedings on a parcel of improved land located in Jefferson County, Colorado, near the town of Conifer. Lienholders, including Pay Center, Inc. (the senior lienor), Arvada Hardwood Floor Co. (the junior lienor), and the IRS (the tax lienor) were notified, and defendant was assigned to monitor this matter for the IRS. Defendant notified the bank that the IRS intended to pursue its interest in the property.

Lesuer learned of the impending sale and told defendant she was interested in purchasing the property. Recognizing a potential conflict of interest, Lesuer decided to purchase the property in her sister's name. However, Lesuer later withdrew the bid on the property, and the IRS decided not to redeem. On May 31, 1978, the foreclosure sale was held and the bank acquired a certificate of purchase for the property from the public trustee.

Lesuer then decided to purchase the property from the bank in her sister's name. Relying in part upon defendant's advice, she tendered $2,334.76 to the bank on August 22, 1978, and the certificate of purchase was transferred to her sister. On September 1, 1978, Lesuer and her children obtained a quitclaim deed to the mountain property from Lesuer's sister. Lesuer was interested in improving the small cabin located on the property, but because of the outstanding liens, was hesitant about investing additional money in the property. Defendant told Lesuer that the junior lien would be extinguished as a result of pending litigation and that the $437.08 senior lien was so small no one would pursue it. However, in December 1978, defendant purchased the senior lien for approximately $228.00.

On December 14, 1978, defendant sent a letter and supporting documents, including

---

1. § 18–9–111(1)(d), 8 C.R.S. (1978).

2. § 18–4–401, 8 C.R.S. (1978). This statute has been amended. *See* § 18–4–401, 8 C.R.S. (1984 Supp.).

3. § 18–4–502, 8 C.R.S. (1978).

4. § 18–8–306, 8 C.R.S. (1978).

5. § 18–5–114, 8 C.R.S. (1978). This statute has been amended. *See* § 18–5–114, 8 C.R.S. (1984 Supp.).

a writ of execution, to the Jefferson County Sheriff's Office requesting execution on the mountain property. That office notified the former owner of this property, and Lesuer and her children, of the pending sale. However, defendant did not list the junior lienor as a party to be notified, and no notice of sale was sent by any public official to the junior lienor.[6] Defendant was the only bidder at the sheriff's sale. For the sum of approximately $800, representing the costs of the sale, he acquired a sheriff's deed and certificate of purchase for the property on April 25, 1979. Although the calculated bid amount was $5,090, this amount included a sum of $4,250 for legal costs which, in large part, represented the time defendant indicated that he spent conducting legal research.

On May 21, 1979, defendant quitclaimed the mountain property to Lesuer; the deed was subsequently recorded. On June 18, 1979, Lesuer delivered a check for $2,000 to defendant, who in turn gave Lesuer a receipt acknowledging "full payment" for the mountain property. Defendant then deposited the $2,000 into his credit union account.

On September 12, 1979, defendant filed a warranty deed with the Office of the Jefferson County Clerk and Recorder conveying the property from himself, as holder of the senior lien, to himself as an individual. The document contained an allegation that the May 1979 quitclaim deed to Lesuer had been removed from defendant's possession "without due consideration." Lesuer learned of this filing and confronted defendant about it. Subsequently, on March 13, 1980, defendant executed another warranty deed, which deed conveyed the mountain property to Lesuer for "$10 and other good and valuable consideration."

On August 27, 1980, defendant advised Lesuer by letter that she did not own the mountain property because she had taken and recorded deeds to the property without his approval. The letter indicated that defendant would give Lesuer credit for $2,000, but warned that if a "balance" of $28,000 was not paid by September 14, 1980, he would institute legal proceedings against her. Defendant also filed another warranty deed with the Jefferson County Clerk and Recorder's Office on August 27, 1980. This deed, purportedly from defendant and Lesuer as grantors to defendant as grantee, indicated that it had been executed for "Correction of Records Only" and "to serve notice and correct title." The deed, which was not signed by Lesuer, also stated that the March 13, 1980, warranty deed was void because it had been "taken[,] stolen, or otherwise removed from my possession and recorded without my permission, authority, intent, and without due consideration."

In June 1980, Steve Simer, an IRS internal security division investigator, began investigating the status of the mountain property. Simer contacted Lesuer; Phillip Gay, an investigative auditor with the Jefferson County District Attorney's Office; and Diana Tibaldo, a clerk in the Jefferson County Assessor's Office, who told Simer that defendant had made certain threats against her when he sought to record the August 1980 warranty deed.

On October 7, 1980, defendant telephoned Lesuer and informed her that later in the afternoon he was going to dispose of all of her belongings housed in the cabin. Lesuer then called Simer, and the two arranged to have lunch to discuss this threat. While driving to the designated restaurant, Lesuer noticed defendant following her. Lesuer and Simer decided to go to a different restaurant, but defendant again followed them. When Lesuer returned to work later that day, defendant again telephoned her. As she had done for several months, Lesuer recorded the October 7,

---

**6.** Defendant testified that he had personally informed the junior lienor of the sale prior to the date thereof. Although this testimony is not refuted, the trial court's findings indicate that defendant's testimony was found to be not credible.

1980, telephone conversation with defendant.

When Lesuer left work that afternoon, defendant was waiting for her in the parking lot. She and defendant then drove to the property in separate vehicles. Earlier in the day, Simer, Gay and another Jefferson County District Attorney's Office investigator had concealed themselves near the property. By previously established radio contact, they advised Lesuer to enter the cabin, lock the door behind her, exit through the rear door and go to a waiting car.

Upon arriving at the cabin, Lesuer entered the front door, told defendant to wait outside, locked the front door, and then left through the back door and ran to an awaiting car. The investigators observed defendant wait for several minutes, then knock and pound on the door, and finally walk around the cabin to the sliding glass door at the back of the dwelling. Defendant testified that when he looked into the cabin and saw that Lesuer was not there, he left without entering. However, the evidence established that the front door of the cabin had been unlocked from the inside. As defendant attempted to drive away, the investigators stopped and arrested him.

## II

Defendant argues that section 18-9-111(1)(d), 8 C.R.S. (1978), defining the offense of harassment, violates the due process clauses of the Colorado and United States Constitutions[7] because its critical language is impermissibly vague. We agree.

■■■ A penal statute must define an offense with sufficient clarity to permit ordinary people to understand what conduct is prohibited and in such manner that does not encourage arbitrary and discriminatory enforcement of the statute. *Kolen-*

der v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *People v. Schoondermark,* 699 P.2d 411 (Colo.1985); *People v. Castro,* 657 P.2d 932 (Colo.1983); *People v. Allen,* 657 P.2d 447 (Colo.1983). Thus, the due process clauses of the federal and Colorado constitutions require articulation of definite and precise standards capable of fair application by judges, juries, police and prosecutors. *See Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Castro,* 657 P.2d 932; *Allen,* 657 P.2d 447. As emphasized in *Kolender,* "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" 461 U.S. at 358, 103 S.Ct. at 1858 (quoting *Goguen,* 415 U.S. at 575, 94 S.Ct. at 1248).

Section 18-9-111(1)(d), 8 C.R.S. (1978), provides that a person commits the crime of harassment if, "with intent to harass, annoy, or alarm another person," such person "[e]ngages in conduct or repeatedly commits acts that alarm or seriously annoy another person and that serve no legitimate purpose." In *Bolles v. People,* 189 Colo. 394, 541 P.2d 80 (1975), this court found subsection (1)(e) of the harassment statute, which subsection prohibited certain communications, to be facially overbroad and, therefore, unconstitutional because the prohibitions contained therein impermissibly infringed upon rights of free speech protected by the first amendment. We there noted that the terms "annoy" and "alarm," when given their conventional meanings, were so broad that the most innocuous comment about a debatable or unpleasant topic might subject a person to criminal prosecution under subsection (1)(e). *Id.* at 397–98, 541 P.2d at 82–83. We also noted in *Bolles* that engrafting the additional phrase "without any legitimate purpose"

---

7. U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

onto that subsection would have injected further uncertainty into the statute. *Id.* at 398, 541 P.2d at 83.

■ Subsection (1)(d) prohibits conduct rather than communication. In terms of due process analysis, however, this distinction is one which makes no difference. There is no particular legislative concern defined by the statute; any and all conduct, by any person, is encompassed by the statutory scheme. An actor, a clown, a writer or a speaker all might be subject to criminal prosecution because their acts are perceived by some official to annoy or alarm others. Protection from such unfettered prosecutory discretion is the essence of the due process requirement that offenses be legislatively defined with particular standards which ordinary citizens who must conform their conduct thereto can understand. *See Kolender,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903. While some degree of generality is admittedly necessary in any legislative efforts to prohibit human conduct, *see Allen,* 657 P.2d at 449, a statute articulating a standard so general exceeds the bounds of flexibility constitutionally available to the legislature.

■ Subsection (1)(d) contains no limiting standards to assist citizens, courts, judges or police personnel to define what conduct is prohibited and, conversely, what conduct is permitted. We therefore conclude that the subsection violates the due process clauses of the United States and Colorado Constitutions. *See Kolender,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903. In view of this conclusion, we do not reach defendant's additional claims that subsection (1)(d) violates his first amendment rights and that the evidence was insufficient to support a conviction of harassment.

### III

Defendant challenges his conviction of theft on the grounds that the information

8. *See supra* note 2.

failed to give him adequate notice of the offense with which he was charged and that the evidence was insufficient to sustain the conviction. We agree that the evidence does not support defendant's conviction of theft; therefore, we do not reach defendant's claim of inadequate notice.

The fourth count of the information charged that on June 18, 1979, defendant committed the crime of theft by unlawfully taking and exercising control over "money with the value of two hundred dollars or more, but less than ten thousand dollars, from Edytha Lesuer," in violation of section 18–4–401, 8 C.R.S. (1978).[8] In its findings and conclusions the trial court noted that this charge presented some difficulty "because of the scheme and plan that the defendant used," but concluded in pertinent part as follows:

> In considering the elements of the charge of theft, theft may be committed by means of deception. And I'm convinced beyond a reasonable doubt that the defendant in this case did use deception in obtaining and exercising control over the $2,000 that he obtained from Mrs. Lesuer. The deception that I would note that he used in this particular case would be that he did not fully inform the sheriff's office in this case as to the interests that he knew about in the property involved in this case and caused the sheriff to go ahead and sell the property, foreclose on the Pay-Center lien, without the Arvada Hardwood Company being given a notice of [its] right to redeem, thereby allowing him to take—obtain the property without coming up with any money except the costs of the sheriff's sale; also, by discouraging the victim in this case from bidding on the property by putting in his costs at $4,000, which included, as he said, legal fees for 42½ hours, as I recall, of legal work, when he hadn't really paid that amount of money for that particular service, which got the bid up over $5,000.

Section 18–4–401, 8 C.R.S. (1978), provides that a person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, by threat or deception. The trial court did not conclude that defendant obtained Lesuer's $2,000 by any threat, and the record would support no such conclusion.

The offense of theft by deception requires proof that misrepresentations made to the victim caused the victim to part with something of value in reliance upon those misrepresentations. *People v. Ferrell,* 197 Colo. 253, 591 P.2d 1038 (1979); *People v. Terranova,* 38 Colo.App. 476, 563 P.2d 363 (1976). The trial court apparently found defendant's failure to inform the sheriff of the name of the junior lienor and his inclusion in the bid letter of a $4,250 cost item for his personal legal research to constitute misrepresentations. The trial court also implied that defendant took advantage of his knowledge that Lesuer could not afford to place a high bid on the property to deceive her. However, the record is clear that Lesuer knew of the existence of the junior lien prior to the sale; she and defendant had discussed the existence of that lien. Furthermore, the trial court acquitted defendant of any false filing in connection with the bid letter; any conclusion that the large sum listed as legal costs constitutes a misrepresentation to Lesuer is refuted by such acquittal. More importantly, the trial court did not find that Lesuer relied upon either of these representations when she paid $2,000 to defendant for a quitclaim deed to property which at the time was owned by defendant and which had an appraised value of $1,800. Under these circumstances, we conclude that the evidence fails to support the trial court's conclusion that defendant committed the offense of theft by deception charged in the information.

## IV

Defendant contends that there is insufficient evidence in the record to support his conviction of criminal trespass. We disagree.

Section 18–4–502, 8 C.R.S. (1978), provides in pertinent part that a person commits the crime of first degree criminal trespass "if he knowingly and unlawfully enters or remains in a dwelling." The trial court found that defendant "did not have any permission, right, or authority" to enter the cabin, and that "he did enter that dwelling." When viewed in the light most favorable to the prosecution, the evidence, together with every reasonable inference which might be fairly drawn from the evidence, is sufficient to sustain defendant's conviction. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

Two witnesses testified about defendant's conduct at the cabin. Lesuer testified that when she arrived at the cabin she unlocked the front door, told defendant to wait outside, and entered the cabin. She stated that she then locked the front door and exited through a sliding glass door located at the back of the cabin. She also stated that she did not give defendant permission to enter the cabin. Investigator Kiekbusch testified that he observed defendant try to open the front door and, when unsuccessful, begin to kick and pound upon it. Kiekbusch then observed defendant walk around the side of the cabin toward the back of the dwelling. Kiekbusch then went to the back of the cabin, found the sliding door open, entered the cabin and observed that the front door was unlocked.

The trial court specifically found that defendant did not have any permission, right, or authority to enter the cabin. This finding is supported by Lesuer's testimony and by the fact that on October 7, 1980, defendant was not the owner of the mountain property. The testimony of Lesuer and Kiekbusch permits the inference that defendant entered the cabin and unlocked the front door after Lesuer had left. These facts are quite different from those

in the case of *In re D.G.P.*, 194 Colo. 238, 570 P.2d 1293 (1977), upon which defendant relies. In that case, a criminal trespass conviction was reversed because the defendant, who possessed a key to the dwelling, had been implicitly authorized by a prior tenant to enter the property. Here, defendant was neither expressly nor impliedly authorized to enter the cabin. By doing so, in the circumstances of this case, he violated section 18–4–502.

## V

Defendant challenges his conviction of attempting to influence a public servant on the ground of insufficient evidence. He also argues that section 18–8–306, 8 C.R.S. (1978), is unconstitutionally vague and overbroad. Because we conclude that the evidence does not support defendant's conviction, we do not reach defendant's constitutional claim.

■ Section 18–8–306, 8 C.R.S. (1978), provides as follows:

**Attempt to influence a public servant.** Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

The critical elements of this offense are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action.

Defendant was charged with violating this statute in connection with his communications with Tibaldo, an employee of the Jefferson County Assessor's Office. In connection with this alleged offense, the trial court made the following pertinent findings:

[T]he defendant in this case was advised by [Tibaldo] that she would not change the records of her office to reflect him as the owner of the property because the deeds that he had filed were invalid, according to the county attorney; at which time he informed her that he was an officer with the I.R.S. and that he could cause her a great deal of difficulty or trouble, and became abusive with her. So I would have to find that the element, then, that he did threaten her or attempt to cause her to alter her opinion or to take action, has been satisfied; and, therefore, I find beyond a reasonable doubt that he is guilty of that charge, count number 3.

The primary evidence regarding this charge consisted of the testimony of Tibaldo. She testified that on the day in question she informed defendant by telephone that she had been advised by the county attorney that she could not record the warranty deed defendant had submitted. She stated that defendant "got very upset" and asked her whether she knew who he worked for, and when she answered that she did not, he stated: " 'I work for the I.R.S., and if you don't get it straightened out I could cause you lots of problems.' " When Tibaldo replied that she was sorry that she could not help him, defendant "started cursing." Tibaldo then put the telephone down and summoned her supervisor. At trial, defendant testified that no such telephone conversation occurred.

■ Defendant's single comment that he could cause Tibaldo lots of problems is neither deceitful conduct nor a threat of violence. The comment may permit the inference that defendant attempted to influence Tibaldo by threat of economic reprisal. However, it cannot be inferred beyond a reasonable doubt that by requesting Tibaldo to "straighten it out," in view of her comment that she had been given advice from a third party—the county attorney—defendant intended to alter or affect her decision. Notably, the trial court's

findings do not include a finding that defendant had the intent to alter or affect Tibaldo's decision. However improper defendant's comments might have been, they did not, in our opinion, indicate an intent to alter or affect Tibaldo's decision.

## VI

Defendant challenges his two convictions of offering a false instrument for recording on the ground that such convictions are not supported by the evidence. We disagree.

Defendant was convicted of two counts of offering a false instrument for recording, in violation of § 18–5–114, 8 C.R.S. (1978).[9] The charges were based upon the warranty deeds which defendant filed on September 17, 1979, and September 3, 1980. With regard to the 1979 warranty deed, the trial court found as follows:

> [T]he defendant in this case put the statement on that deed that the previous quit claim [sic] deed that he had given was either stolen, without consideration, or had been removed from him; and, therefore, it was void, which I have heretofore found and would state again that that was a false statement....

With regard to the 1980 warranty deed, the trial court made the following findings:

> Again, that deed was executed after he had delivered a warranty deed to the victim in this case conveying the property to her. And again he claimed that the deed was false or was stolen and was without consideration and void. And I would have to find that that was false.

Although the trial court's findings include specific reference to the element of knowing conduct, they do not contain a specific

reference to the element of intent to defraud. However, in context this omission does not require the reversal of defendant's convictions.

Initially, we note that the trial court made a general finding regarding defendant's purpose or goal during the various transactions. More importantly, defendant's intent to defraud may be inferred from his conduct and from the circumstances of the case. *See Miller v. District Court,* 641 P.2d 966 (Colo.1982); *People v. Becker,* 187 Colo. 344, 531 P.2d 386 (1975). The September 17, 1979, warranty deed appeared to transfer title from defendant, as assignee of the senior lienor, to defendant, as an individual. However, defendant had previously executed a quitclaim deed in favor of Lesuer on May 21, 1979. Although the warranty deed contained defendant's assertions that the quitclaim deed had been taken or stolen without due consideration, defendant had previously given Lesuer a receipt for $2,000 "in full payment" for the mountain property. The September 3, 1980, warranty deed appeared to convey the property from defendant and Lesuer to defendant. Defendant attempted to record this deed without obtaining Lesuer's signature, and the statement therein, to the effect that the deeds he previously had given to Lesuer were without consideration and void, was false. We conclude that defendant's conduct, in the circumstances of this case, establishes beyond a reasonable doubt that he intended to defraud either Lesuer, the county clerk and recorder, or both.

## VII

Prior to trial, defendant executed a waiver of his right to trial by jury. He now

**9.** The information charged defendant with six counts of offering a false instrument for recording. Two counts were dismissed prior to trial, and the trial court found defendant not guilty of two other counts. As noted *supra* in note 5, § 18–5–114 was amended on April 13, 1980. Therefore, defendant's conduct on September 3, 1980, was governed by the amended version of § 18–5–114. In substance, the pertinent language of the amended statute is identical to the former version. The former statute was merely relabeled offering a false instrument for recording "in the first degree," and new language was added defining a new offense of "offering a false instrument for recording in the second degree." The penalty for violation of the statutory language here involved remained unaltered.

contends that the waiver was not made knowingly and voluntarily. We disagree.

The right to trial by a jury in criminal cases is guaranteed by the United States and Colorado Constitutions. U.S. Const. amend. VI; Colo. Const. art. II, sec. 23. Additionally, at the time of defendant's trial, section 16–10–101, 8 C.R.S. (1978),[10] provided that "[t]he right of a person who is accused of an offense to have a trial by jury is inviolate, and a matter of substantive due process of law as distinguished from one of 'practice and procedure.'" The right to trial by jury is thus one of those primary personal rights fundamental to our system of government.

■■■ A defendant in a criminal case may elect to waive the right to a jury trial. *Rice v. People*, 193 Colo. 270, 565 P.2d 940 (1977). Thus, Crim.P. 23(a)(5) provides:

> Except as to class 1 felonies, the person accused of a felony or misdemeanor may waive a trial by jury by express written instrument filed of record, or by his announcement in open court appearing of record if the prosecuting attorney consents. Trial shall then be by the court.

Any such waiver is effective only if it is made understandingly, voluntarily and deliberately, *see People v. Fowler*, 183 Colo. 300, 516 P.2d 428 (1973); *People v. Evans*, 44 Colo.App. 288, 612 P.2d 1153 (1980), and any conclusion that a valid waiver was made must be a matter of certainty, *see Rice*, 193 Colo. 270, 565 P.2d 940. In this case, defendant signed and filed with the trial court a waiver form stating that defendant, "being advised of the nature of the charges against him and of his right to trial by jury, hereby waives his right to be tried by jury, and consents that trial shall be to the Court without a jury." At a pretrial hearing on an unrelated matter, the trial court learned of the written waiver and asked defendant whether he had signed it. Defendant responded in the affirmative. However, in a new trial motion defendant asserts that the trial court erred in failing to determine the validity of his waiver of the right to a jury trial, and an accompanying affidavit states that neither his attorney nor the trial court explained such right to him and that his trial attorney "ordered" him to sign the waiver. After conducting a hearing, the trial court denied the new trial motion.

■■■ In *Fowler*, this court considered a similar contention. We there held that a defendant who executes a written waiver of the right to a jury trial and who does not object when the defendant's attorney, in the defendant's presence, informs the trial court of such fact, shall be deemed "to have acquiesced in, and to be bound by" the action of the attorney. *Fowler*, 183 Colo. at 304, 516 P.2d at 429 (quoting *People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397 (1969)). We thus concluded that the waiver would be deemed to have been made understandingly, voluntarily and deliberately, absent some indication to the contrary on the record. When a defendant asserts that an apparent waiver of a fundamental constitutional right is invalid, the prosecution must establish that the waiver was effective. *People v. Curtis*, 681 P.2d 504 (Colo.1984). Once the prosecution has established a *prima facie* case of effective waiver, however, the defendant must present evidence from which it could be reasonably inferred that the waiver was not voluntary, knowing and intentional. *Id.* at 515 n.16.

■■■ Here, defendant executed a written document containing the information that he had a right to a jury trial and, when questioned by the trial court, acknowledged that he had signed the waiver form filed with the court. This evidence fully satisfies the People's burden of establishing a *prima facie* waiver. Defendant has not asserted that he did not have personal knowledge of his right to a jury trial; rather, he merely argues that neither his attor-

---

**10.** § 16–10–101 has been amended. *See* § 16–  10–101, 8 C.R.S. (1984 Supp.).

ney nor the trial court expressly advised him of this right. However, the waiver form he signed did so advise him, however. We conclude that in these circumstances the record fully supports the trial court's conclusion that defendant knowingly, voluntarily and intentionally waived his right to a trial by jury.

## VIII

■ Defendant next contends that the trial court erroneously permitted the prosecution to introduce into evidence the tape recording of an October 7, 1980, conversation between Lesuer and defendant. On appeal, defendant argues that the prosecution did not establish a sufficient foundation for such evidence. However, defendant did not raise this objection at trial. Rather, he filed a motion on the day of trial seeking suppression of all statements and any movies or other "mechanical tests" on the ground that the statements were obtained "without benefit of counsel of any kind and without any warning of any kind and taken without his understanding of the effects of such statements, movies and tests." He also objected during trial to the admission of the recording because Lesuer had not complained about defendant's conduct to any official. Having failed to object to the foundation testimony presented by the prosecution at any time during the trial, defendant cannot challenge such evidence on appeal. *See Christensen v. Hoover,* 643 P.2d 525 (Colo.1982).

## IX

Defendant claims that he was denied his constitutionally guaranteed right to counsel because his trial attorney provided inadequate representation. We do not agree with this argument.

■ The right to counsel is guaranteed by the United States and Colorado Constitutions. U.S. Const. amend. VI; Colorado Const. art. II, sec. 16. Thus, a defendant in a criminal proceeding is entitled to receive the reasonably effective assistance of an attorney acting as his diligent and conscientious advocate. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Stroup v. People,* 656 P.2d 680 (Colo.1982); *People v. White,* 182 Colo. 417, 514 P.2d 69 (1973).[11] However, a defendant in a criminal proceeding is not entitled to error-free representation. *People v. Velasquez,* 641 P.2d 943 (Colo.), *cert. denied,* 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982). When a defendant challenges a conviction on the ground of ineffective assistance of counsel, an initial question to be answered is whether defense counsel's performance at trial was below the level of reasonably competent assistance to which an accused is constitutionally entitled. *See Strickland,* 104 S.Ct. 2052; *Stroup,* 656 P.2d 680; *People v. Moody,* 630 P.2d 74 (Colo.1981). Our review of the record convinces us that the performance of defendant's trial counsel did not fall below the requisite level of competence.

■ Defendant first argues that defense counsel's failure to actively pursue a motion for pretrial discovery constituted inadequate representation. Defendant was entitled to a pretrial investigation sufficient to reveal potential defenses and the facts relevant to guilt or penalty. *White,* 182 Colo. 417, 514 P.2d 69; *People v. Dillard,* 680 P.2d 243 (Colo.App.1984). However, defendant has not suggested any error committed by his trial counsel which is directly attributable to that attorney's pretrial investigation. *See White,* 182 Colo. 417, 514 P.2d 69. Indeed, defense counsel argued at trial that the information was deficient in failing to specify the county in

---

11. In *Strickland,* the Supreme Court articulated a two-part test for determining the merits of a claim of ineffective assistance of counsel under the United States Constitution: "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." 104 S.Ct. at 2064. In *Stroup* we recognized the inadequate performance standard as a measure of a claim of ineffective assistance of counsel. Having determined that defense counsel's performance was not constitutionally deficient here, the issue of prejudice need not be addressed.

which the theft occurred, and presented strong defenses to all the charges. We can find no basis in the record to support defendant's argument that his attorney's pre-trial investigation was inadequate.

■ Defendant next asserts that his trial attorney provided inadequate legal advice by suggesting that defendant reject a plea agreement tentatively arranged by prior counsel. The proposed agreement included an offer by the prosecution to accept a deferred plea to one felony count and a *nolo contendere* plea to a class three misdemeanor in exchange for dismissal of the remaining counts. According to the testimony of defendant's wife, trial counsel advised defendant to reject this agreement because the trial court might require a plea of guilty and might impose a jail sentence upon defendant. The record establishes the fact that defendant himself decided to reject the proposed plea agreement, discharged his initial attorney, and did not retain the defense counsel whose conduct he now challenges until after the proposal was rejected. The conduct of defendant's trial attorney with regard to this matter did not constitute ineffective assistance of counsel. *See Moody*, 630 P.2d 74.

■ Defendant asserts that he personally prepared a seven-page motion for new trial and an accompanying fifteen-page memorandum, which documents were signed by his trial attorney. Although defendant argues that this conduct demonstrates ineffective representation, he does not suggest that the documents themselves were ineffective. In fact, the motion and memorandum fully delineated numerous issues in support of the request for a new trial, and another attorney subsequently hired by defendant was permitted by the trial court to file an amended motion for new trial. The record does not reflect why defendant prepared these documents or what role defendant's trial attorney played in the decision to permit defendant to author them. Without more information than is presented by the record, we cannot conclude that defendant was denied effective assistance of counsel because defendant prepared post-trial documents which his attorney signed.

■ Defendant's final argument, that defense counsel's decision to forego cross-examination of Tibaldo and his allegedly inferior closing argument also demonstrate inadequate representation, is without merit. The question of whether to cross-examine a witness is a tactical decision left to defense counsel's judgment; here, considering defendant's testimony that the telephone conversation described by Tibaldo never occurred, the decision may not be considered irresponsible, and defense counsel's summation adequately addressed the issues remaining for the trial court's resolution. Defendant has failed to demonstrate that his trial counsel's representation was constitutionally ineffective.

## X

Defendant's final argument, that the cumulative effect of the asserted errors at trial resulted in a deprivation of his right to due process of law, is without merit.

Defendant's convictions for harassment, attempting to influence a public official and felony theft are reversed. Accordingly, the sentences imposed upon these convictions are vacated. Defendant's convictions for first degree trespass and offering a false statement for recording are affirmed.

LOHR, J., dissents in part and DUBOFSKY, J., joins in the partial dissent.

LOHR, Justice, dissenting in part:

I disagree with the conclusion reached in part V of the majority opinion that there is insufficient evidence to support the defendant's conviction for attempting to influence a public servant. *See* § 18–8–306, 8 C.R.S. (1978). Therefore, I respectfully dissent from that part of the opinion, while joining in all other sections of the opinion.

As stated by the majority, the elements of the crime of attempting to influence a public servant are: "(1) an attempt to influ-

ence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action." 703 P.2d at 1269. The only testimony at trial on this issue came from Diana Tibaldo, the employee of the Jefferson County Assessor's Office whom the defendant allegedly attempted to influence. Tibaldo testified that when she told the defendant that she had been advised by her superiors that she could not transfer the property to Norman on the assessor's records based on the deeds Norman had recorded, he stated: " 'I work for the I.R.S., and if you don't get it straightened out I could cause you lot [sic] of problems.' "

The majority concedes that this statement could be construed as a threat of economic reprisal, but finds that there is no indication of an intent "to alter or affect Tibaldo's decision." The trial court, in contrast, found "that the element, then, that he did threaten her or attempt to cause her to alter her opinion or to take action, has been satisfied." A trial court's finding of fact, supported by adequate evidence in the record, should not be disturbed on review, even though this court, had it been the trier of fact, might have found differently. *People v. Johnson*, 653 P.2d 737, 740 (Colo. 1982). The fact that the trial court failed to use the word "intend" does not change the substance of its finding. It would be illogical to interpret the trial court's statement to mean that the defendant used threats in an attempt to make Tibaldo take action to transfer the property on the assessor's records, but had no intention to alter or affect her decision not to do so.

Because I believe that the trial court's ruling was adequately supported by the evidence, and that the defendant's constitutional challenges to the statute are without merit, I would uphold the defendant's conviction for attempting to influence a public servant.

I am authorized to say that Justice DUBOFSKY joins in this partial dissent.