OPINION OF THE COURT
John G. Leaman, J.
The defendant is charged by indictment with" two counts of vehicular assault in the second degree (Penal Law § 120.03) and one count of operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law §1192 [3]). The court will discuss the said defendant’s omnibus motion in substantially the same order that topics are addressed therein.
*178 AS TO ALLEGEDLY PRIVILEGED MATERIAL SUBMITTED TO THE GRAND JURY
Defendant argues under this heading that the Grand Jury proceedings were fatally compromised by reason of the introduction into evidence of certain hospital records pertaining to observations and treatment of him in the aftermath of the accident out of which the charges contained in the subject indictment arose. These records were obtained pursuant to a subpoena duces tecum issued by the District Attorney.
It is, of course, true that CPLR 4504 (a) creates a physician-patient privilege, and that this privilege, which is to be given a broad and liberal construction to carry out its policy, proscribes disclosures by a hospital or doctor, among others, of information acquired in attending a patient in a professional capacity, and which was necessary to enable the caregiver to act in that capacity (Matter of Grand Jury Investigation, 59 NY2d 130). However, the privilege does not create an impenetrable barrier around the patient and observations made of him prior to or even upon and after his arrival at a hospital, and facts which are plain to the observation of anyone without expert or professional knowledge are not within the privilege (Matter of Grand Jury Investigation, supra, at 134).
For purposes of this motion, the court will assume, arguendo, that defendant’s hospital records which were submitted to the Grand Jury for its consideration in connection with the instant indictment contained at least some privileged material. Further, the court will assume, arguendo, that the "blood test result” contained in those hospital records and "flagged” by the defendant in his motion papers was privileged. The question then becomes: Does it make a difference? The court’s answer, after a thorough and eye-glazing review of the hospital records, is that it does not. In the first place, the "blood test result” referred to by defendant is not one which ascertained the per centum by weight of alcohol in his blood (cf, Vehicle and Traffic Law §§ 1192, 1194). Rather, it listed various elements tested for in defendant’s "serum”, such as sodium, potassium and so forth, and including "serum alcohol”, which latter element was described as "239 mg/dl”. Thus, taken by itself, this "blood test result” cannot reasonably be understood as having any likely bearing at all upon the Grand Jury proceedings, for it does not convey to a reasonable person lacking specialized medical knowledge any plausible inferences to be drawn concerning intoxication, the gravamen of *179 count three of the indictment. Also, it should be noted that no attention was drawn by the Assistant District Attorney who presented the case to this or indeed any part of the hospital records in question. The entry in the hospital records that, if considered by the Grand Jury, would likely have been understood and factored by it, is one contained in a "physician progress note” dated March 30, 1990, the date of the transactions underlying the subject indictment, describing the defendant as "alert, anxious, intoxicated”. Another entry of the same date also refers to "alcohol intoxication” on the part of the defendant. These entries are patently those of medical personnel, made from their observations of defendant in connection with his admission to the hospital. That this is so appears clearly from the fact that they preceded his formal admission to the hospital, and were made at 6:45 p.m. (i.e., 1845 as indicated in the record in question), and, furthermore, the "blood test result” found so contaminating to the Grand Jury’s deliberations, from defendant’s vantage point, was not initiated until 7:00 p.m. nor the results completed until no earlier than 7:17 p.m. and probably not until 7:44 p.m. In either event, all pertinent entries corroborate that which already is patent, as aforesaid, namely, that the references in the hospital records to defendant’s "intoxication” resulted from medical personnel’s observations of the defendant, and not from any admission to that effect by the defendant (he made none) or any tests performed upon him (including but not limited to the "blood test result” which defendant "flagged” in his motion papers and which, as the court has demonstrated, followed — not preceded — the observations by medical personnel of defendant’s "intoxication”). Further corroboration to this same effect, if any is needed, is the testimony to the Grand Jury by a police officer who observed defendant at the scene of the accident in question as well as at the hospital on March 30, 1990 at the time of his initial arrival and admissions processing, which testimony was, inter alia, that the defendant was verbally abusive to the rescue squad which transported him to the hospital, that the odor of alcohol emanating from the defendant was strong, and that the defendant was "verbally abusive using foul language [and] swear words to the doctors and x-ray technicians”.
The entries in the hospital records concerning defendant’s "intoxication” are not covered by the physician-patient privilege, since they pertain to facts which are plain to the observation of anyone without expert or professional knowledge *180 (Matter of Grand Jury Investigation, supra). The case of People v Hedges (98 AD2d 950) is instructive. There, an emergency room physician was allowed to testify that his patient, the defendant Hedges, had a strong odor of alcohol on his breath, that his speech was slurred and disjointed, and that he was extremely intoxicated. These observations were found to be within the competence of "a lay person”, and hence not privileged.
Accordingly, since the only entries in the hospital records which can plausibly be viewed as having been considered by the Grand Jury and factored into its deliberations are those concerning defendant’s intoxication, and since those entries are not privileged, the court concludes that the introduction of defendant’s hospital records into the Grand Jury proceedings does not compromise those proceedings or the resulting indictment. Those portions of the hospital records that might reasonably, even persuasively as I will assume for present purposes, be understood as falling within the physician-patient privilege cannot plausibly be viewed as forming any basis for the subject indictment and their submission to the Grand Jury may be viewed as harmless error.
Defendant’s arguments with rfespect to the use by the District Attorney of a subpoena duces tecum to obtain defendant’s hospital records have been considered and found unpersuasive. The cases which he cites, namely, People v Natal (75 NY2d 379) and People v Warmus (148 MisC 2d 374) do not pertain to a Grand Jury presentation, wherein a District Attorney has a special status quite distinct from his role at a trial (cf., CPL art 190; CPL 610.25). Short of having the court review materials subpoenaed in connection with a Grand Jury proceeding, it is difficult to see what might have occurred differently with respect to the subpoena duces tecum as it was actually utilized, save, of course, an arguably more effective performance in redacting privileged material. Since lack of redaction has worked no prejudice to defendant in the instant case, and since the court here perceives no prosecutorial misconduct such as confronted or was construed to confront the Natal and Warmus courts, no relief is necessary or appropriate, and certainly not the draconian relief of dismissing an indictment.
[Portions of opinion omitted for purposes of publication.]