*711 OPINION OF THE COURT
Alan L. Lebowitz, J.
Motion by nonparty witness, Mark Koser, M.D., for an order pursuant to CPLR 2304 quashing a nonparty subpoena for an oral examination before trial and/or an order of protection pursuant to CPLR 3122 with regard to the testimony sought by the subpoena is decided in accordance with the decision/order below.
The underlying facts of this action as set forth in the motion papers currently before the court are as follows: on February 9, 1996 near the Harmon Cove Station in Secaucus, New Jersey, an eastbound New Jersey Transit commuter train either collided with or nearly collided with a westbound train causing both trains to derail. Mr. John DeCurtis (DeCurtis), who engineered the eastbound train, died as a result of the accident. The accident further resulted in passenger casualties that led to more than 50 lawsuits in the State of New Jersey, which actions were consolidated into one action entitled Hodges v New Jersey Transit bearing docket No. Hud-L-3986-96.
Dr. Ralph D’Agostino (Dr. D’Agostino), a named defendant in the New Jersey action, was employed by New Jersey Transit as a physician. It is alleged that in furtherance of his employment Dr. D’Agostino performed, inter alia, physical exams of the engineers and certified them as fit for work. Dr. Mark Koser (Dr. Koser), who was DeCurtis’ personal physician, was also a named defendant in the action. The New Jersey court, however, determined that since Dr. Koser was a New York resident, the court lacked personal jurisdiction over him and the case against him was dismissed. Among the allegations set forth in the New Jersey action is that Dr. D’Agostino is liable for classifying DeCurtis as fit for work when in fact DeCurtis had a vision impairment. Further, that DeCurtis’ vision impediment was a cause of the accident in that he either did not see a red signal or saw the signal too late to stop his train.
As part of his defense in the New Jersey action, Dr. D’Agostino sought to depose Dr. Koser with respect to Dr. Koser’s treatment of DeCurtis. Dr. Koser argues that he is precluded from releasing any information concerning his treatment of DeCurtis because the information is protected by the physician/patient privilege. Further, that DeCurtis’ wife, as the representative of DeCurtis’ estate, refused to waive the physician/patient privilege and states that her husband never told her of his physical condition and that she was therefore unaware of any eye problem.
*712 Dr. Koser now seeks to quash a subpoena and/or for a protective order based upon the physician/patient privilege.
The State of New York has a liberal discovery scheme. Pursuant to CPLR 3101 (a), “[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action” (see, Allen v Crowell-Collier Publ. Co., 21 NY2d 403). Since 1828, however, New York abrogated the common-law rule that compelled physicians to disclose information obtained while treating their patients (see, Prince, Richardson on Evidence § 5-301 [Farrell 11th ed]). This rule is a creature of statute and is codified in CPLR 4504 (a), which provides that: “Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.” This rule is referred to as the “physician/patient privilege.”
In Steinberg v New York Life Ins. Co. (263 NY 45, 48-49), the Court held that the rule’s intent “is to protect those who are required to consult physicians from the disclosure of secrets imparted to them; to protect the relationship of patient and physician and to prevent physicians from disclosing information which might result in humiliation, embarrassment or disgrace to patients.” In other words, the rule’s purpose is to foster a free flow of information between physician and patient so as to ensure proper diagnosis and treatment. Communications deemed privileged shall not be obtainable upon objection of a party or person holding the privilege and are shielded from discovery (CPLR 3101 [b]). The privilege applies at examinations before trial (Hughson v St. Francis Hosp., 93 AD2d 491, 498; Hughes v Kackas, 3 AD2d 402, 403), and it applies to oral testimony and documents, such as hospital and medical records (see, Fisch, New York Evidence § 542, at 358 [2d ed]), which, logically, are drafted based on communications imparted by the patient to the treating physician.
The privilege belongs to the patient (Prink v Rockefeller Ctr., 48 NY2d 309, 314). Once the privilege is validly asserted, it must be recognized and the sought-after information may not be disclosed unless it is demonstrated that the privilege has been waived (CPLR 4504 [a]; see, Koump v Smith, 25 NY2d 287, 294; 5 Weinstein-Korn-Miller, NY Civ Prac 4504.19; Fisch, New York Evidence § 554, at 373 [2d ed]). The privilege may be waived only by the patient (CPLR 4504 [a]) or, with a *713 deceased patient, the privilege may be waived by the personal representative, the surviving spouse, or the next of kin of the decedent (CPLR 4504 [c] [1]). Another possible waiver of the privilege may occur when the patient brings or defends a personal injury action in which the patient’s mental or physical condition is affirmatively put in issue (see, Dillenbeck v Hess, 73 NY2d 278; Koump v Smith, 25 NY2d 287). In Koump, the Court held that “[a]s a practical matter, a plaintiff or a defendant, who affirmatively asserts a mental or physical condition, must eventually waive the privilege to prove his case or his defense” (Koump v Smith, supra, at 294). Alternatively stated, the physical condition must be “ ‘in controversy’ ” (Dillenbeck v Hess, supra, at 287).
Here, the record is void of any waiver of the privilege. The decedent’s wife affirmatively stated that she did not waive the privilege. Further, DeCurtis’ physical or mental condition has not been placed in issue by DeCurtis’ representatives. Although DeCurtis’ physical condition is an issue in the action, it is not “in controversy” in the nature outlined by Dillenbeck and Koump to justify a waiver (see, Dillenbeck v Hess, 73 NY2d 278, supra; Koump v Smith, 25 NY2d 287, supra; Williams v McGinty, 205 AD2d 617, 618).
Generally, in the absence of waiver, the privilege prohibits disclosure by a physician of information acquired in a professional capacity, and which was necessary to enable the physician to act in that capacity (CPLR 4504 [a]). “The privilege applies not only to information communicated orally by the patient, but also to ‘information obtained from observation of the patient’s appearance and symptoms, unless the facts observed would be obvious to laymen’ [citations omitted]” (Dillenbeck v Hess, 73 NY2d 278, 284, supra [emphasis added]). The facts sought to be obtained by Dr. D’Agostino go beyond those that a layman could observe. If DeCurtis wore corrective lenses, that certainly could be observed by anyone who saw him. Whether or not DeCurtis was diabetic, had color blindness, had eye surgery, or sought treatment for an eye impairment are undoubtedly facts that only the patient, his physician, and anyone the patient communicated this information to would know. There is no proof that DeCurtis revealed his alleged condition to anyone.
The mere facts and incidents of a person’s medical history, however, are not what the privilege seeks to protect (see, Williams v Roosevelt Hosp., 66 NY2d 391, 395-396; Klein v Prudential Ins. Co., 221 NY 449, 453). As the Court of Appeals *714 stated in Williams, “a witness may not refuse to answer questions regarding matters of fact” (Williams v Roosevelt Hosp., supra, at 397). Thus, the fact that DeCurtis was Dr. Koser’s patient is not protected under the privilege. However, any facts obtained by Dr. Koser from DeCurtis that extended to the existence of DeCurtis’ ailment were acquired through an examination of DeCurtis in attending him in a professional capacity, and the discovery of which was a necessary incident to the investigation made to enable Dr. Koser to act in his professional capacity are within the privilege (see, Klein v Prudential Ins. Co., 221 NY 449, 453).
Therefore, Dr. Koser is limited to answering one question— was DeCurtis a patient? Any other information sought, including, but not limited to, DeCurtis’ diabetes and associated eye problems is information obtained by Dr. Koser in his professional capacity to enable him to treat DeCurtis and is therefore confidential and protected by the privilege. Further, flowing directly from that confidential information is the number of DeCurtis’ office visits and any exams, surgery, or other treatment Dr. Koser deemed necessary to perform. As stated above, the privilege also applies to Dr. Koser’s medical records, including those contained in a National Transportation Safety Board (NTSB) report which is annexed to Dr. D’Agostino’s opposition papers, notwithstanding the fact that the NTSB obtained these medical records in an undisclosed manner.
One cannot deny that DeCurtis’ death is a significant obstacle to obtaining proof about his condition. Dr. D’Agostino has even argued that the application of the privilege under these facts frustrates his defense, the interests of justice, and New York’s broad discovery rules. Nevertheless, such arguments do not warrant a change in the physician/patient privilege as enacted by the Legislature and interpreted by the New York courts. The facts of this proceeding dictate that the privilege be applied and upheld.
Accordingly, it is ordered that the motion to quash a nonparty subpoena of Mark Koser, M.D., to appear for an examination before trial and for an order of protection with regard to the testimony sought by that subpoena is granted.