The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Richard COVINGTON, Defendant–
Appellant.

No. 96CA1665.

Colorado Court of Appeals,
Div. IV.

March 18, 1999.

Rehearing Denied May 6, 1999.

Certiorari Granted Oct. 18, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John J. Krause, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Claudia Brett Goldin, Deputy State Public Defender, Lisa Dixon, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Richard Covington, appeals the judgment and conviction entered upon a jury verdict finding him guilty of second degree assault, possession of more than eight ounces of marihuana, and misdemeanor menacing. We reverse defendant's conviction for second degree assault, affirm the other convictions, and remand for a new trial.

Second degree assault, as charged here, requires that the actor recklessly cause serious bodily injury to another person by means of a deadly weapon. Section 18–3–203(1)(d), C.R.S.1998.

In the early morning hours of August 11, 1994, defendant returned home late in an agitated and intoxicated state. Upon entering his residence, he yelled at his wife, loaded his rifle, and fired two shots through the living room floor. A few seconds later, he fired a third shot which went through the wall into a child's bedroom and struck his wife, penetrating and exiting both of her upper thighs without hitting any bones, nerves, or arteries.

The wife was taken immediately to the local hospital emergency room which was staffed with an on-call physician assistant. Physician assistants are certified by the State Board of Medical Examiners and are permitted to perform acts which constitute the practice of medicine to the extent permitted by the board and as delegated to them, and as supervised, by a licensed physician. Section 12–36–106(5), C.R.S.1998.

The physician assistant diagnosed, treated, and stabilized the wife before transferring her to a metropolitan hospital for further treatment. In addition, at the request of an investigating officer who was present in the emergency room, the physician assistant photographed the wife's wounds.

In the course of their investigation, police officers searched defendant's home and the surrounding area and discovered some marihuana.

Prior to trial, the wife filed a motion *in limine* invoking her physician-patient privilege. The trial court ruled that the physician assistant could not be questioned about the care she had provided but did permit the physician assistant, over objection, to testify as to the foundation for the admission of photographs of the wife's injuries.

Since one element of second degree assault is serious bodily injury, *see* § 18–3–203(1)(d), C.R.S.1998, the physician assistant was also permitted to testify as to the nerves, bones, and blood vessels in the vicinity of the wound which could have been involved, and the seriousness of the wounds that would have happened had those bodily structures been damaged.

Relative to that same issue, the non-treating emergency room physician, using the photographs, testified as to the concerns that the observable injury would present to a treating physician, most particularly, the internal injuries to the nerves, bones, and blood vessels possible from such a wound. The emergency room physician also expressed the opinion that such a wound could, without saying that the actual wound did, cause a substantial risk of death, permanent serious disfigurement, or a permanent loss or impairment.

Defendant sought to use the victim's medical records to cross-examine the physician assistant and the emergency room physician, to show that the bullet did not hit any important bodily structure. Defendant also wanted to use the wife's medical records to show that, based on the treatment received by the wife, the treating medical personnel were not, in fact, concerned that she had received such internal injuries. The trial court ruled that defendant could not elicit such testimony because it would violate the wife's physician-patient privilege.

Defendant moved to strike the physician assistant's testimony and, after the expert witness testified, moved for a mistrial. Both motions were denied.

### I.

Defendant first argues that the trial court committed reversible error by allowing the physician assistant to testify in violation of the wife's physician-patient privilege. Defendant specifically contends that the photographs of wife's wounds were inadmissible because they depicted information covered by the wife's physician-patient privilege. Further, defendant contends the physician assistant's testimony violated the wife's privilege by describing her wounds and telling the jury the treatment decisions which led to her transfer to a metropolitan hospital for treatment. We agree that admission of such evidence mandates reversal of the second degree assault conviction.

Section 13–90–107(1), C.R.S.1998, provides: (d) A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient *as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.* . . . (emphasis added)

■ The purpose of this privilege is to encourage patients to make a full disclosure of medically relevant information to their physicians by reducing the possibility of humiliation or embarrassment through later public disclosure of such information by the physician. *People v. Deadmond,* 683 P.2d 763 (Colo.1984).

The applicability of the physician-patient privilege to a physician assistant is not at issue. *See* § 12–36–106(5), C.R.S.1998 (describing the extent to which a physician assistant may practice medicine).

■ The information protected by the privilege extends beyond communications and includes observations resulting from an examination necessary to act or prescribe treatment for the patient. The privilege can be waived if third parties are present, and the information is communicated to, or is readily discernable by, the third parties. *People v. Marquez,* 692 P.2d 1089 (Colo. 1984). "The burden of establishing a waiver is on the party seeking to overcome the claim

of privilege." *People v. Deadmond, supra,* 683 P.2d at 770.

In *Stauffer v. Karabin,* 30 Colo.App. 357, 492 P.2d 862 (1971), the defendant in a medical malpractice action was permitted, over the plaintiff's objection, to call a physician who had treated the plaintiff's mother for a similar condition to testify about that treatment. The purpose of the testimony was to impeach the testimony of the plaintiff and establish that the plaintiff's consent to treatment was an informed consent. Defendant asserted that the privilege was personal to the patient and could not be asserted by the plaintiff.

In reversing the judgment in favor of the defendant, the division stated:

It is implicit in the wording of the statute that the relationship between a physician and his patient and any information acquired from that relationship are extremely private matters warranting a high degree of protection; that their disclosure by a physician should be prevented unless waived; and that the law will provide that protection at the time the disclosure is attempted, rather than merely providing a remedy after violation.

Where the patient is not a party to the action and is not present or represented by counsel in the courtroom, the mandate of the statute directs the court to enforce the privilege unless a proper waiver is obtained, or a party to the proceedings protects the privilege, as in the case before us.

*Stauffer v. Karabin, supra,* 30 Colo.App. at 362, 492 P.2d at 864–65.

■ The photographs at issue here depict the wounds to the wife's upper thighs and show her buttocks and genital area. The investigating officer testified that he generally knew the location of the injuries but did not testify that he had observed the injuries or that the photographs accurately depicted the injuries. Thus, although the photographs were taken at the request of the investigating officer who was present in the emergency room, they memorialized the physician assistant's observations necessary for treatment, not those of the investigating officer.

The People argue that because the photographs were taken at the request of the officer and the physician assistant testified that they were not necessary to enable her to prescribe or act for the wife, they are not privileged. We conclude that the People read the rule too narrowly and the exception too broadly.

■ The photographs depicted the observations that the physician assistant had to make to enable her to prescribe or act for the patient. *See* § 13–90–107(1)(d). The privilege would clearly preclude the physician assistant from verbally describing what she observed in the course of treating the wife. The privilege also, in our view, precludes the physician assistant from testifying that the photographs accurately depict what she observed in the course of treatment as that is merely the same testimony in another form.

Put simply, the physician assistant could not, as she was permitted to do, describe the injuries she observed and treated. Nor can she, as she was also permitted to do, testify as to what treatment was administered, her decision making process in formulating a treatment plan, or the concerns which the injury presented to her.

■ The trial court indicated that the wife might "possibly" have waived the physician-patient privilege as to the photographs by consenting to the taking of the pictures. The record is not clear, however, as to whether the wife was aware that the photographs were being taken at the request of the police officer, nor is it clear as to whether wife's permission to be photographed was requested by anyone. We conclude, as apparently did the trial court, that the prosecution did not meet its burden in establishing a consent or waiver as to the photographs. *See People v. Deadmond, supra.* We further conclude that a patient does not waive the physician-patient privilege merely by failing to ask whether all aspects of an examination are in furtherance of medical treatment.

■ We are convinced that the erroneous admission of the privileged information through the physician assistant prejudiced defendant. It is not clear, on this record,

whether the pictures could have been admitted through another witness. Suffice it to say, no foundation was attempted with any other witness, including the wife. The pictures formed the basis for the testimony of the emergency room physician who testified for the prosecution, and without them there is no apparent way the emergency room physician could have formed the opinions expressed.

Hence, since this evidence was significant in proving the element of serious bodily injury, its improper admission mandates reversal.

## II.

Because it may arise on retrial, we address defendant's argument that the jury was permitted to consider irrelevant evidence and was improperly instructed on the issue of serious bodily injury. We disagree.

Section 18–1–901(3)(p), C.R.S.1998, defines "serious bodily injury" as:

[B]odily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

■ Defendant relies on *Stroup v. People,* 656 P.2d 680 (Colo.1982) to argue that the trial court erred by allowing witnesses to testify concerning the risks associated with wounds of the type suffered by the victim. In *Stroup,* the defendant was charged with first degree assault after stabbing his ex-wife on the forehead. At trial, the prosecution's medical expert witness was permitted to testify about what the consequences would have been had the wound been in a slightly different location and penetrated the brain.

Although the supreme court ultimately concluded there was overwhelming evidence of serious bodily injury, it held that the testimony concerning the impact of a different wound was irrelevant to proving the seriousness of the actual injury.

The plain language of the 'serious bodily injury' and 'bodily injury' definitions focuses on the injury the victim actually suffered rather than the risk to the victim posed by the defendant's conduct.

. . . .

At the defendant's trial, the prosecution's medical expert was allowed to testify that the stab wound to the victim's forehead created a 'substantial risk of death' because the knife would have penetrated the brain had the point of entry been a fraction of an inch to the right or left. . . . While such testimony as to the gravity of the risk created by the defendant's conduct may be relevant as circumstantial evidence of his intent to inflict serious bodily injury, such evidence is irrelevant to prove that the defendant's acts caused a substantial risk of death to the victim based on the actual injuries inflicted. The trial court, therefore, erred in allowing this testimony to be considered by the jury, over defense counsel's objection, in determining whether the victim suffered serious bodily injury.

. . . .

In considering whether the element of serious bodily injury to the victim was established, the jury was free to accept or to reject any or all of the state's medical evidence. There is no way to determine from the record whether the jury relied on the competent evidence, the erroneously received evidence, or both in finding serious bodily injury. Therefore, the trial court's admission of the doctor's testimony that the victim's injuries posed a substantial risk of death was prejudicial to the defendant by imposing a greater risk of conviction of first degree assault, with its higher penalty provision, rather than second degree assault.

*Stroup v. People, supra,* 656 P.2d at 685–86.

Here, after questioning the emergency room physician at some length about the concerns presented by a patient suffering from a wound as disclosed from the pictures and as described by the prosecutor, the emergency room physician was asked the following hypothetical question:

Prosecutor: Now, what I'm going to ask you to do is answer this question to a high degree of medical certainty.

Physician: Okay.

Prosecutor: And if you can't you can let us know. Going back to this [hypothetical] patient that we're talking about that has a gunshot wound, what I want to do is focus your attention as (sic) relation to the injury on this based upon this person coming in and just as they're going to receive their initial treatment, okay?

Physician: Okay.

Prosecutor: Not after they've been treated and stabilized and had the miracle of medicine applied to [him or her], okay?

Physician: Okay.

Prosecutor: Can you tell me, based on the injury that I've described to you, the path, and from the injury that you see in the photograph describing that path, showing you that path, someone who receives a gunshot wound coming through the left thigh just below the pelvis, exiting the inner left thigh into the right thigh, at the time that they were shot and just coming in, is there a substantial risk at that time prior to treatment that they could die from that injury?

Physician: In my mind when I see an injury like that, to me that is a potentially life-threatening injury.

In addition, subsequent hypothetical questions were posed to the emergency room physician with respect to the risk of serious permanent disfigurement or a permanent or protracted loss occasioned by the wife's wound.

Defendant argues that there is no serious bodily injury unless the bullet actually struck and inflicted damage to an organ or system and thereby created a serious risk of death, serious permanent disfigurement, or a permanent or protracted loss. In this instance, apparently the bullet did not actually strike an artery, bone, or nerve.

In *People v. Sanchez,* 751 P.2d 1013 (Colo. App.1988), the victim was stabbed four times and suffered a lacerated liver. During ex-

ploratory surgery, it was determined that the liver was not bleeding and, therefore, did not require any treatment. The surgeon was permitted to testify that 62% to 90% of untreated liver lacerations result in death. The division, relying in part on *Stroup*, stated that there was sufficient evidence to support a jury finding of serious bodily injury.

Here, the emergency room physician testified as to the risks associated with a bullet wound based on the points of entry and exit, taking into account the structures and vessels in or near the path to the extent that can be determined from an exterior examination of the wife. The fact that none of those structures or vessels were actually involved, whether fortuitously or not, does not diminish the fact that the wound actually inflicted involved a substantial risk of death, serious permanent disfigurement, or a permanent or protracted loss. Unlike the situation in *Stroup*, the emergency room physician here did not discuss the risks associated with a different wound or a wound in a different location. Defendant invites us to, in effect, substitute "actual" for "risk"; we decline the invitation.

■ In a parallel argument, defendant argues that the trial court erred in failing to deliver an instruction he tendered which stated:

> The definition of serious bodily injury focuses on the injury which the victim actually suffered rather than the risk to the victim proposed (sic) by defendant's conduct, and the focus has to be on the damage actually caused by the bullet, not on what damage might have occurred under different circumstances.

While we agree that the focus of the inquiry is on the injury and not the risk posed by defendant's conduct, *see Stroup v. People, supra,* the definition of serious bodily injury speaks in terms of injury, not damage. In addition, the definition of serious bodily injury speaks in terms of risk of loss, not realized loss. Therefore, in our view, the tendered instruction is not a correct statement of the law and the trial court's refusal to deliver it was appropriate.

Accordingly, on retrial, an expert witness should be permitted to testify in the same manner as the emergency room physician did at trial here if an adequate foundation for that testimony can be established without privileged testimony, and the jury should deliberate with an instruction defining "serious bodily injury" in accordance with the statute.

### III.

■ As to another issue that may arise on retrial, defendant argues that the trial court erred by admitting the results of a breath-alcohol test performed on him shortly after the shooting. We disagree.

The evidence of defendant's breath-alcohol content clearly was relevant to show that he acted recklessly by handling a deadly weapon while intoxicated. This evidentiary hypothesis was advanced by the expert witness' opinion that, based on his professional experience, alcohol lowers a person's inhibitions. *See* CRE 702.

■ We also reject defendant's claim that the evidence of his breath-alcohol level was "other act" evidence. Evidence suggesting that defendant was intoxicated was *res gestae* which, in addition to the breath test, was introduced without objection through other witnesses.

■ However, we do agree with defendant that it was unnecessary for the trial court to instruct the jury that intoxication is not a defense to any of the charged offenses, when such a defense was not asserted. Although the instruction was an accurate statement of the law, it was superfluous and should not be given again upon retrial under the same circumstances.

### IV.

As guidance for the retrial, we also address, and reject, defendant's contention that the trial court erred in admitting certain similar transaction evidence under CRE 404(b).

■ Here, the trial court admitted evidence showing that, the night before the shooting, defendant had struck his wife and

pulled her hair. Applying the four-part test set out in *People v. Spoto*, 795 P.2d 1314 (Colo.1990), the trial court ruled that the evidence was relevant to prove that the shooting was not accidental and that defendant acted either knowingly (the *mens rea* for the first degree assault charge) or recklessly (the *mens rea* for the second degree assault charge). *See Romero v. People*, 170 Colo. 234, 460 P.2d 784 (1969). It also found that the relevance of the evidence was independent of an intermediate inference of bad character and that the probative value of this evidence, in assisting the jury to analyze defendant's state of mind, outweighed the danger of unfair prejudice.

Before the victim's testimony concerning the prior assault, the court instructed the jury that the evidence could only be considered to "evaluate whether the defendant in this case acted knowingly or recklessly." Although the court did not repeat this cautionary instruction when a second witness described the assault, at the conclusion of the trial, the court did give the jury a limiting instruction in conformity with *COLJI–Crim.* No. 4:02 (1983).

Based on our review of the entire record, we conclude the trial court acted within its discretion in admitting the other act evidence. The assault evidence was relevant to disproving defendant's claim that the shooting was an accident by showing his indifference to the victim's welfare. Further, the cautionary instructions were sufficient to restrict the jury's consideration of the evidence to that purpose. Hence, under similar circumstances, the evidence will also be admissible on retrial.

## V.

Finally, defendant contends the trial court erred by allowing the prosecution to elicit "other act" evidence during re-direct examination of the victim. We disagree.

During cross-examination by defendant, the victim testified that, after the shooting, she moved from Colorado because of a court order prohibiting her from having contact with defendant. The victim further testified that, once the case was resolved, she intended to resume her relationship with defendant.

Over defendant's objection, on re-direct, the prosecutor was allowed to have the victim identify a letter she had written to the court shortly after the shooting in which she had stated that she knew "other abusive incidents would keep occurring unless I called the authorities or I left." The court cautioned the jury that it could consider the evidence of the letter only for purposes of assessing the wife's credibility.

We conclude that, contrary to defendant's suggestion, the evidence of the wife's letter was properly admitted solely for impeachment purposes, not as proof of other acts. *See People v. Harris*, 892 P.2d 378 (Colo.App. 1994). Hence, it may be admitted for that same purpose on retrial.

The judgment of conviction for second degree assault is reversed and the judgment of conviction for possession of marihuana and menacing is affirmed. The cause is remanded for a new trial on the charge of second degree assault consistent with the views expressed in this opinion.

Judge RULAND and Judge CASEBOLT concur.