The PEOPLE of the State of Colorado, Petitioner,

v.

Richard COVINGTON, Respondent.

No. 99SC431.

Supreme Court of Colorado, En Banc.

Feb. 20, 2001.

As Modified on Denial of Rehearing March 12, 2001.

Ken Salazar, Attorney General, John J. Krause, First Assistant Attorney General, Criminal Justice Section, Appellate Division, Denver, CO, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Lisa Dixon, Deputy State Public Defender, Denver, CO, Attorneys for Respondent.

JUSTICE KOURLIS delivered the Opinion of the Court.

This case raises the issue of whether a photograph of a victim's injury taken by a physician assistant at the request of an investigating police officer falls under the physician-patient privilege, and if so, whether it is nonetheless admissible by operation of statute.[1] The trial court admitted the photo-

---

**1.** We initially granted certiorari to consider          whether photographs of a victim's injuries taken

graph into evidence at Defendant Richard Covington's trial for a number of charges arising out of an incident in which he shot his wife through a bedroom wall.[2] The jury found Mr. Covington guilty of second degree assault, possession of more than eight ounces of marijuana, and misdemeanor menacing. The court of appeals found prejudicial error in the second degree assault conviction, reversed the defendant's judgment of that conviction and remanded for a new trial. *People v. Covington*, 988 P.2d 657, 660 (Colo.App. 1999).

We now conclude that the information contained in the photographs does fall within the physician-patient privilege. However, we find that section 12–36–135, 4 C.R.S. (2000), operates to abrogate the privilege by virtue of the legislative determination that in episodes of domestic violence or gunshot wounds, physicians have a duty to report and may testify in court regarding the injuries they observed in the examination. Therefore, the trial court did not err in admitting the photographs into evidence.

## I.

Richard and Elaena Covington owned and operated a white water rafting company and a short-term cabin rental company in Twin Lakes, Colorado. On August 11, 1994, Mr. Covington returned home in an intoxicated state. Mr. Covington loudly berated his wife about a family to whom she had rented one of their cabins, then loaded his rifle and fired two shots into his bedroom floor. A few minutes later, he fired a third shot through the bedroom wall and hit Mrs. Covington as she lay in bed with the couple's two-year-old daughter. The bullet entered Mrs. Covington's buttocks on her left side, exited inside of her left thigh, and entered the right thigh.

An ambulance took Mrs. Covington to the hospital. A female physician assistant was on duty and attended to Mrs. Covington. In the emergency room, the investigating Sheriff's officer asked the physician assistant to take photographs of the wounds, because the wounds were located in the groin area. The physician assistant testified at trial that she took the picture at the officer's request while the officer was in the emergency room and that she did not need the photograph for purposes of medical treatment. However, the record is unclear regarding exactly where the officer was located in the emergency room and whether or not Mrs. Covington consented to being photographed, or even knew that the physician assistant was taking the photographs.

Mr. Covington was charged with first degree assault, two counts of crime of violence, second degree assault, first degree criminal trespass, possession of more than eight ounces of marijuana, and misdemeanor menacing. He moved to suppress the photographs from evidence on the basis that they violated Mrs. Covington's physician-patient privilege. Mrs. Covington testified and invoked the privilege at the pre-trial motions hearing. However, Mrs. Covington did not appeal the judge's ruling on the use of the photographs at trial.[3] The trial court ruled that because the photographs of Mrs. Covington's injuries were not necessary for treatment, they did not fall within the physi-

---

by a physician assistant at the request of an investigating police officer are covered by the physician-patient privilege when the physician assistant testified that the photographs were not necessary for her to prescribe or act for the victim. Subsequently, we issued a sua sponte order directing the parties to brief the issue of what effect, if any, section 12–36–135, 4 C.R.S. (2000), has on the admissibility of the photographs at issue.

**2.** The State charged Mr. Covington with one count of first degree assault, section 18–3–202(1)(c), 6 C.R.S. (2000); two counts crime of violence, section 16–11–309, 6 C.R.S. (2000); one count of second degree assault, section 18–

3–203(1)(d), 6 C.R.S. (2000); one count of first degree criminal trespass, section 18–4–502, 6 C.R.S. (2000); one count of possession of more than eight ounces of marijuana, section 18–18–406(4)(b)(I), 6 C.R.S. (2000); and one count of menacing, section 18–3–206, 6 C.R.S. (2000).

**3.** Because neither party raised the issue of Mr. Covington's standing to assert Mrs. Covington's physician-patient privilege, we decline to comment on the issue. *Cf. Knight v. State*, 207 Ga. App. 846, 429 S.E.2d 326, 327 (1993); *People v. Wood*, 447 Mich. 80, 523 N.W.2d 477, 482 (1994); *Osborn v. Fabatz*, 105 Mich.App. 450, 306 N.W.2d 319, 322 (1981); *Evans v. State*, 802 S.W.2d 507, 511 (Mo.1991).

cian-patient privilege and thus allowed the physician assistant to provide foundation testimony for the photographs. The trial court further concluded that the evidence was relevant to whether the assault caused serious bodily injury, one of the elements of second degree assault. § 18–3–203(1)(d), 6 C.R.S. (2000). The case went to the jury and Mr. Covington was ultimately convicted of second degree assault, possession of more than eight ounces of marijuana, and misdemeanor menacing. He appealed his convictions to the court of appeals.

The court of appeals determined that the decision to admit the photographs into evidence constituted prejudicial error, because they fell within the physician-patient privilege and Mrs. Covington had not waived that privilege. The court of appeals remanded for a new trial. *Covington*, 988 P.2d at 664.

## II.

■ We must begin our analysis with a brief discussion of the parameters of the physician-patient privilege. The privilege is statutory, and provides that "[a] physician, surgeon, or registered professional ... shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." § 13–90–107(1)(d), 5 C.R.S. (2000). The legislature created the physician-patient privilege to "encourag[e] patients to fully disclose medically relevant information to their physicians by reducing the possibility of humiliation or embarrassment through subsequent public disclosure of such information by the physician." *People v. Deadmond*, 683 P.2d 763, 769 (Colo.1984). A physician assistant is a certified medical professional, and we conclude that physician assistants fall within the privilege statute. § 12–36–106(5), 4 C.R.S. (2000) (describing the extent to which a physician assistant may practice medicine).

■ The physician-patient privilege applies to "observations resulting from examination" as well as to actual communications. *People v. Marquez*, 692 P.2d 1089, 1095 (Colo.1984). Because the physician-patient

privilege is statutory, courts should construe it narrowly. *Id.*

■ The physician-patient privilege attaches when the information acquired by the physician is necessary for the physician to "act or prescribe for the patient." § 13–90–107(1)(d). Names, addresses, and phone numbers do not fall within the privilege because a doctor does not need them to prescribe or act on behalf of the patient. *Belle Bonfils Mem'l Blood Ctr. v. Dist. Court*, 763 P.2d 1003, 1009 (Colo.1988). Additionally, information obtained by a physician to assist the patient in pending litigation, not for the purposes of diagnosis, is not privileged. *B.B. v. People*, 785 P.2d 132, 140 (Colo.1990) (involving the assertion of the psychiatrist-patient privilege, but equating that privilege with the physician-patient privilege).

In *Hanlon v. Woodhouse*, 113 Colo. 504, 510, 160 P.2d 998, 1001 (1945), this court refused to apply the physician-patient privilege to the testimony of a physician derived from a blood sample taken at the request of a public official conducting an inquiry into the intoxication of the defendant. The court ruled that testimony by the doctor concerning the blood sample was not privileged because the doctor did not need the information to prescribe or act. *Id.* at 508–10, 160 P.2d at 1001 (noting that the prosecution presented no evidence indicating necessity and, "the record affirmatively show[ed] that the test was procured by the physician because of, and in obedience to, a request from a public officer").

## III.

■ In determining whether or not the photographs fall under the physician-patient privilege, we focus on the information contained within the photographs, not the photographs themselves. The People argue that because the physician assistant did not need the photographs to administer treatment to Mrs. Covington, the privilege does not apply to the photographs. Mr. Covington responds that the physician assistant did use the information contained in the photographs to treat Mrs. Covington. Therefore, a photograph's memorialization of observations should fall within the privilege as long as the privilege

includes the actual observations. We agree with Mr. Covington.

The evidentiary inquiry focuses on the depicted data, not the photograph itself. Focusing solely on the photographs, and not the depicted data, would frustrate the purpose of the privilege by admitting otherwise protected information merely because of the method used to deliver the information. *Cf. Deadmond*, 683 P.2d at 769 (the statute's function is to encourage full disclosure by patients by reducing the possibility of humiliation or embarrassment through subsequent public disclosure of such information). Because the physician assistant took the photographs and the information contained within the photographs represents an observation the physician assistant made during her examination, and because that observation is one that she would not have made were it not for her position as a treating professional, we hold that it falls within the physician-patient privilege. *See Marquez*, 692 P.2d at 1095.

## IV.

Although the information contained within the photographs is privileged, we must next determine whether or not the privilege has been waived. This requires an analysis of three different scenarios. First, we will discuss whether or not the officer's presence in the emergency room would constitute a waiver of Mrs. Covington's privilege. Second, we will examine whether the layperson exception applies in this case. Finally, we will discuss the effect that the Reporting Statute, section 12–36–135, 4 C.R.S. (2000), has on the privilege.

## A.

The party holding a testimonial privilege such as the physician-patient privilege may waive the privilege, either by an express or implied consent to disclose. *Clark v. Dist. Court*, 668 P.2d 3, 8 (Colo. 1983). The party seeking to overcome the claim of privilege has the burden of establishing a waiver. *Id.* When a communication between a physician and a patient takes place in the presence of a third party, not only may the third person testify as to the communication, but if it is plain that the patient did not intend what was said or done to be confidential, the physician may testify. *Deadmond*, 683 P.2d at 770. However, the mere presence of a third party does not immediately waive the physician-patient privilege. Instead, we have held that in order for the physician-patient privilege to be waived by the presence of a third party, the information must be readily discernable to everyone present. *Marquez*, 692 P.2d at 1096.

In this situation the presence of a third party in the emergency room does not vitiate the physician-patient privilege. The record does not clarify whether the victim consented to the taking of the photographs. Although the victim was coherent, the record does not establish whether she even knew that the physician assistant took the photographs, let alone whether anyone asked permission to take the photographs. Therefore, we agree with the court of appeals that the officer's possible presence in the emergency room does not waive the physician-patient privilege in this case. *Covington*, 988 P.2d at 661.

## B.

Some jurisdictions, including New York, define privileged information to include both oral communications and observational information; however, they exclude "facts observed [that] would be obvious to laymen." *In re Application of D'Agostino*, 181 Misc.2d 710, 695 N.Y.S.2d 473, 477 (N.Y.Sup.Ct.1999); *see also People v. Hedges*, 98 A.D.2d 950, 470 N.Y.S.2d 61, 62 (N.Y.App.Div.1983) (finding an emergency room physician's testimony concerning alcohol odor, slurred speech, and extreme intoxication of the patient not privileged information because the observations fell within the competence of a layperson); *People v. Beneway*, 148 Misc.2d 177, 560 N.Y.S.2d 96, 98 (N.Y.Co.Ct.1990) (holding that privilege does not extend to observations regarding the intoxication of a patient when such observations were plain to those without professional knowledge).

Colorado has followed the layperson exception to a limited extent. In *Marquez*, we held that the physician-patient privilege may be

waived in situations where the court limits the physician's testimony to information obtained through observation and examination and the testimony concerning the patient's condition is "disclosed to or readily discernible to others present." 692 P.2d at 1096. We limited the layperson exception to situations where third parties were actually in the room, rather than situations where the information would have been obvious to a layperson if she or he had been present. *Id.*

Application of the layperson exception in this case would suggest that the presence of a third person in the room waived the privilege. We decline to reach that result. First, although the officer was in the room, the record is unclear as to his location and ability to observe the taking of the photograph. Presumably, if he had been able to or comfortable with taking the photograph himself, he would not have asked the physician assistant to do so. Second, the information contained in the photograph was not "readily discernable" to him, because of the location of the wound and the fact that a patient would not necessarily willingly expose that location to layperson observation. The highly private nature of the wounds' location and the embarrassment that might surround their publication is exactly what the physician-patient privilege is designed to protect.

## C.

Hence, we turn now to the operation of a statutory exception to the physician-patient privilege. In 1979, the legislature enacted the Reporting Statute to impose on a physician the duty to report to law enforcement any bullet wound or injury the physician has attended or treated or that he or she believes was intentionally inflicted or the result of a criminal act. § 12–36–135(1), 4 C.R.S. (2000). In 1995, the legislature amended the act to clarify both that the reporting requirements applied to domestic violence situations, and that the statute was

meant to abrogate the physician-patient privilege as it applied to the description of the wounds, not verbal communications between the physician and the patient. § 12–36–135(3).[4] On its face, the statute applies and would permit admission of the photographs into evidence.

Mr. Covington argues that under the original Reporting Statute, the photographs would not have been admissible, and that the amendments to the Reporting Statute should not apply because this offense occurred in 1994. Since this case involves a gunshot wound, the Reporting Act in its unamended form would have required the physician (or physician-assistant under our holding in this case) to report the incident to law enforcement if he or she believed it was the result of a criminal act. The statute covers this fact scenario.[5] Hence, our inquiry is the extent to which that duty to report abrogates the physician-patient privilege. The General Assembly answered that question in the 1995 amendments and we must determine whether that amendment constituted new law and could therefore not apply to this case, or whether it constituted a clarification of existing law.

Amendments to a statute either clarify the law or change it. *Douglas County Bd. of Equalization v. Fidelity Castle Pines, Ltd.*, 890 P.2d 119, 125 (Colo.1995). We presume that the legislature intends to change the law when it amends a statute. *Id.* A showing that the legislature only intended to clarify an ambiguity with the amendment can rebut this presumption. *Id.* Thus, if an amendment clarifies the law, the law remains unchanged. *Corsentino v. Cordova*, 4 P.3d 1082, 1091 (Colo.2000).

The legislative hearings on the amendments support the position that, as to the addition of subsection (3), the legislature intended to clarify rather than change the Reporting Statute. *An Act Concerning Provi-*

---

4. The addition of subsection (3) to section 12–36–135 was one of several amendments included in the Omnibus Bill of 1995. The legislature stated that the amendments included in the Bill should apply to offenses committed on and after July 1, 1995. Ch. 240, sec. 27, 1995 Colo. Sess. Laws 1259, 1259.

5. Because the facts included a gunshot wound, we need not reach the legislature's addition of "domestic violence" to section 12–36–135(1).

*sions for the Purpose of Enhancing the Substantive Crim. Laws: Hearing on H.B. 95–1070 Before House Judiciary Comm. and Senate Judiciary Comm.*, 60th General Assembly of Colo. (testimony of Ray Slaughter, Executive Director of the Colorado District Attorney's Council).[6] By adding subsection (3) to the Reporting Statute, the General Assembly intended to clarify that inherent within the Reporting Statute was an abrogation of the physician-patient privilege as it relates to the bare medical information the physician observed during the examination. Without the physician's ability to testify concerning bare medical information, the duty to report was hollow. Consequently, we conclude that the subsection (3) amendment did not change the statute and it would therefore apply to offenses committed in 1994.

▮ Mr. Covington next argues that the language of the statute is vague and urges us to find it unconstitutional. Section 12–36–135(3) states that "[a]ny physician who makes a report pursuant to subsection (1) of this section shall not be subject to the physician-patient relationship ... as to the medical examination and diagnosis." Mr. Covington argues that because the medical examination and diagnosis are the subject matter of the privilege, the statute is internally inconsistent. In making this argument, Mr. Covington focuses on the statutory language stating that the waiver does not extend to "statements ... that are the subject matter of the privilege." Mr. Covington further asserts that it is not clear whether the statute preserves or eliminates the privilege. We disagree.

Our rules of statutory construction require that we interpret statutory language according to its plain and ordinary meaning. § 2–4–101, 1 C.R.S. (2000); *Snyder Oil Co. v. Embree*, 862 P.2d 259, 262 (Colo.1993). The full language of the relevant section states: "Such physician may be examined as a witness, but not as to *any statements made by the patient.*" § 12–36–135(3) (emphasis add-

ed). The plain language of section 12–36–135(3) clearly states that in cases where a physician has a duty to report an injury to the police, the physician-patient privilege is abrogated only with regard to testimony about the information received from the physician's observations of the patient, not regarding any statements the patient may have made to the physician.

▮ The physician-patient privilege is a statutory creation in derogation of common law. *Cmty. Hosp. Ass'n v. Dist. Court*, 194 Colo. 98, 100, 570 P.2d 243, 244 (1977). The legislature may narrow the privilege when there is an overriding public policy need for the information to become public. *See id.* The abrogation of the physician-patient privilege in section 12–36–135(3) follows much along the same lines as the abrogation of the psychologist-client privilege when a psychologist is required to report child abuse or neglect. § 19–3–311, 6 C.R.S. (2000); *Dill v. People*, 927 P.2d 1315, 1318 (Colo.1996).

In *Dill*, we held that in limiting the abrogation of the psychologist-client privilege to include only those communications upon which the required report is based, the legislature achieved its intent of protecting children from future harm and abuse while still encouraging a patient to seek counseling with the assurance that communications with psychologists remain confidential. *Id.* at 1321. Similarly, by limiting the abrogation of the physician-patient privilege to the description of wounds, and not to verbal communications between the physician and the patient, the legislature sought to strike a balance between the need to protect victims and the desire to encourage them to seek medical help without fear of public embarrassment.

## V.

In summary, we conclude that the information contained in the photographs falls within the physician-patient privilege. However, we view section 12–36–135(3) as abrogating the privilege, because the incident involved gunshot wounds, and the photographs were ob-

---

6. Mr. Slaughter explained to the legislators that the amendment "would clarify " the original legislative intent in the Reporting Statute that "the basic medical testimony [by the treating physician] about the wound itself" would not fall under the physician-patient privilege when the physician has made a mandatory report pursuant to section 12–36–135.

tained through the physician assistant's observation of those wounds. Therefore, we reverse the judgment of the court of appeals and remand with directions to address any remaining issues.