The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2026

**2026 COA 50**

**No. 25CA2151, *People v. Taylor* — Crimes — Serious Bodily Injury — Substantial Risk of Protracted Loss or Impairment**

A division of the court of appeals concludes, as a matter of first impression, that *People v. Vigil*, 2021 CO 46, ¶ 33 — in which the supreme court held that the "facts of the actual injury control the substantial risk of death determination under section 18-1-901(3)(p)[, C.R.S. 2025, which defines serious bodily injury], *not* the risk generally associated with the type of conduct or injury in question" — extends to a trial court's determination under a different clause of section 18-1-901(3)(p): whether the injury involved "a substantial risk of protracted loss or impairment of the function of any part or organ of the body."

The division also concludes that the prosecution's evidence didn't establish probable cause that the suffered injury amounted to serious bodily injury.

COLORADO COURT OF APPEALS                                    **2026 COA 50**

Court of Appeals No. 25CA2151
Chaffee County District Court No. 24CR170
Honorable Dayna Vise, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Monroe Taylor,

Defendant-Appellee.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

Announced June 11, 2026

Jeffrey D. Lindsey, District Attorney, Stephanie B. Miller, Senior Deputy
District Attorney, Canon City, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Magdalena Rosa, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1    The People appeal the district court's order dismissing multiple charges against defendant, Monroe Taylor, after finding that the prosecution failed to prove probable cause for the elements of serious bodily injury (SBI) during the preliminary hearing.  In addressing the People's appeal, we consider, as a matter of first impression, whether *People v. Vigil*, 2021 CO 46, ¶ 33 — in which the supreme court held that the "facts of the actual injury control the substantial risk of death determination under section 18-1-901(3)(p)[, C.R.S. 2025, which defines SBI], *not* the risk generally associated with the type of conduct or injury in question" — extends to a trial court's determination of whether the injury involved "a substantial risk of protracted loss or impairment of the function of any part or organ of the body," under section 18-1-901(3)(p).  We hold that it does and affirm.  We remand the case for further proceedings consistent with this opinion.

## I.    Background

¶ 2    Taylor is an inmate at a correctional facility.  In June 2024, correctional officer Valerie Cerisene went into Taylor's cell to confiscate a radio, which had been playing too loudly.  Taylor had been outside of his cell but followed Cerisene in after he entered the

1

cell.  Taylor asked what Cerisene was doing with the radio and then started to punch Cerisene's head and face.  Taylor put Cerisene in a chokehold, which caused Cerisene to lose consciousness "for a bit." Cerisene suffered injuries to his face, including a lacerated lip, and was dazed.  Cerisene went to the hospital.  Dr. Kevin Merrell, the physician who treated Cerisene, didn't think that Cerisene suffered SBI.  A few days later, Cerisene saw Kevin Percy, a physician's assistant, who also opined that there was no SBI.

¶ 3    In August 2024, Cerisene was treated by an optometrist, Dr. Gavin Walters.  Dr. Walters completed and signed an "SBI Medical Professional Form."[1]  Dr. Walters checked a box on the form indicating that Cerisene's injuries fit the statutory definition of SBI because they involved

---

[1] An "SBI Medical Professional Form" is a standard form completed by a medical professional to indicate the extent of a patient's injuries.  *See generally People v. Vigil*, 2021 CO 46, ¶¶ 6-8. Because neither party challenges Dr. Walters' qualifications to complete and sign the SBI medical professional form, we assume, without deciding, that Dr. Walters was authorized to do so.  We express no opinion on whether an optometrist is a "medical professional" for purposes of completing an SBI medical professional form.

a substantial risk of PROTRACTED LOSS or impairment of the function of any part or organ of the body, specifically, the left eye.

On the form, Dr. Walters described Cerisene's injuries and Dr. Walters' reason for the SBI determination as follows:

> The patient received trauma to the head that resulted in traumatic iritis and had a significant risk of retinal detachment with flashes of light and floaters reported in the vision. Retinal detachment, if not promptly treated, may lead to a permanent substantial reduction of vision.

¶ 4 As relevant here, the prosecution charged Taylor with one count of first degree assault as a crime of violence, alleging SBI and use of a deadly weapon (hands) in violation of section 18-3-202(1)(a), C.R.S. 2025; one count of first degree assault as a crime of violence against a person employed in a detention facility with a deadly weapon (hands) in violation of section 18-3-202(1)(f); one count of second degree assault as a crime of violence against a peace officer performing a lawful duty by causing SBI in violation of section 18-3-203(1)(c.5), C.R.S. 2025; and one count of second degree assault as a crime of violence, alleging that Taylor was lawfully confined or in custody after being convicted of a crime and unlawfully, feloniously, knowingly, and violently applied physical

3

force against a person employed by a detention facility, in violation of section 18-3-203(1)(f). The prosecution also charged Taylor with crime of violence sentence enhancers under section 18-1.3-406(2)(a)(I)(A)-(B), C.R.S. 2025, for each substantive assault charge.

¶ 5     The district court held a preliminary hearing in October 2025. The correctional facility investigator assigned to the case, Heather Gaffney, was the only person who testified. Gaffney testified that she met with Cerisene shortly after he had been assaulted and that he seemed dazed and confused and had injuries on his face, so she interviewed him later. Gaffney also testified that she "attempted to get an SBI form signed" by Dr. Merrell but that he "did not believe that there was SBI." Similarly, Gaffney confirmed that Percy also opined that there was no SBI.

¶ 6     Gaffney testified that Dr. Walters signed an SBI form, which indicated that "there was a substantial risk of protracted loss or impairment of the function of Cerisene's left eye." Gaffney testified that she was able to obtain Cerisene's medical records from Dr. Merrell and Percy but that she didn't obtain any medical records, "like the full statement," from Dr. Walters aside from the completed

SBI form. Gaffney didn't interview any of the medical staff who treated Cerisene.

¶ 7     At the end of the hearing, the court raised concerns regarding a finding of SBI based on the supreme court's holding in *Vigil*, ¶ 33, which instructs that the "facts of the actual injury control the substantial risk of death determination under [the statute defining SBI], *not* the risk generally associated with the type of conduct or injury in question." In relevant part, the court directed the parties to submit briefs addressing whether *Vigil* "should factor in, and to what extent that may affect the evidence" that had been presented.

¶ 8     After reviewing the briefs, the court issued a written order finding that *Vigil* "directs that the facts of the actual injury control[] whether the prosecution has established [SBI]," and because the prosecution failed to "establish that the injury actually sustained by . . . Cerisene constituted [SBI]," the court dismissed all counts containing an SBI element and all crime of violence counts related

to the dismissed substantive charges.[2] The People appeal the district court's preliminary hearing order.

## II. Discussion

¶ 9 The People first contend that *Vigil* doesn't apply because the charges against Taylor don't involve a *substantial risk of death* but a *substantial risk of protracted loss or impairment of the function of any part or organ of the body*. Alternatively, even if *Vigil* applies, the People argue that the prosecution established probable cause of SBI and that the court erred by dismissing all substantive and crime of violence charges containing SBI as an element. We disagree with both contentions, addressing each in turn.

### A. Applicable Law and Standard of Review

#### 1. Serious Bodily Injury and *Vigil*

¶ 10 SBI is defined as

> bodily injury that, either at the time of the actual injury or at a later time, involves a substantial risk of death; a substantial risk of serious permanent disfigurement; a substantial risk of protracted loss or

---

[2] After finding probable cause existed for all elements of the lesser included offense of second degree assault under section 18-3-203(1)(b), C.R.S. 2025, the court reduced Taylor's charge of first degree assault to second degree assault (causing bodily injury with a deadly weapon).

6

> impairment of the function of any part or organ of the body; or breaks, fractures, a penetrating knife or penetrating gunshot wound, or burns of the second or third degree.

§ 18-1-901(3)(p). "Bodily injury," on the other hand, means "physical pain, illness, or any impairment of physical or mental condition." § 18-1-901(3)(c). The difference between bodily injury and SBI is the degree of the injury. *See Stroup v. People*, 656 P.2d 680, 685 (Colo. 1982) ("The plain language of the 'serious bodily injury' and 'bodily injury' definitions focuses on the injury the victim actually suffered rather than the risk to the victim posed by the defendant's conduct.").

¶ 11    In *Vigil*, the issue before the supreme court was whether the prosecution established sufficient probable cause that the defendant committed first degree assault — SBI with a deadly weapon — when he stabbed the victim in the neck, but the knife missed all vital organs and the injury resulted in the victim needing

7

only stitches.[3]  The doctor treating the victim "believed there was a substantial risk of death, based on the vital areas that *could* be damaged" in the neck.  *Vigil*, ¶ 8.  This shifted the doctor's analysis from the *actual injury* suffered to the risk associated with *what could have been damaged* following a knife wound to the neck.  *Id.* at ¶¶ 38, 40.

¶ 12    The supreme court reversed the trial court's finding that there was probable cause to bind over the first degree assault charge and concluded that the testimony at the preliminary hearing failed to demonstrate that the victim sustained bodily injury that "involves a substantial risk of death."  *Id.* at ¶¶ 38, 48.  As the court explained, the "stab wound to the neck *would* involve substantial risk of death *if* the knife injured certain vital structures."  *Id.*  Relying on *Stroup*,[4]

---

[3] When *Vigil* was decided, the definition of SBI was slightly different under section 18-1-901(3)(p), C.R.S. 2020.  As relevant to *Vigil*'s circumstances, SBI was defined as "bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death."  *Id.*  The legislature amended the definition of SBI in 2023 — after *Vigil* — to include any penetrating knife or penetrating gunshot wounds.

[4] In *Stroup v. People*, 656 P.2d 680, 685 (Colo. 1982), the supreme court analyzed an earlier version of the SBI statute and held that the plain language of the statute "focuses on the injury the victim actually suffered rather than the risk to the victim posed by the defendant's conduct."

8

the supreme court held that "the facts of the actual injury control the substantial risk of death determination" for SBI and *not* the "risk generally associated with the type of conduct or injury in question." *Id.* at ¶ 4.

### 2. The Preliminary Hearing

¶ 13 "[A] preliminary hearing is not a mini-trial; rather, it is a screening tool that seeks to weed out those cases in which prosecution is unwarranted." *People v. Platteel*, 2023 CO 18, ¶ 33. Specifically, it is used "to determine whether probable cause exists to support charges that an accused committed a particular crime." *Miller v. Dist. Ct.*, 641 P.2d 966, 967 (Colo. 1982). To establish probable cause at a preliminary hearing, the prosecution must present evidence sufficient to induce a person of ordinary prudence and caution to entertain a reasonable belief that the defendant committed the crime charged. *People v. Hall*, 999 P.2d 207, 221 (Colo. 2000). It's unnecessary for the prosecution to show beyond a reasonable doubt that the defendant committed the crime, or even the probability of the defendant's conviction. *People v. Dist. Ct.*, 926 P.2d 567, 570 (Colo. 1996). Instead, the court must view the evidence in the light most favorable to the prosecution and draw all

9

reasonable inferences in its favor. *Id.* The prosecution is therefore given latitude to establish probable cause that the defendant committed the crime charged. *Id.*

¶ 14 Generally, we review a trial court's finding of no probable cause for an abuse of discretion. *Hall*, 999 P.2d at 221. Under the abuse of discretion standard, our review is narrowly circumscribed, and we can only reverse if the district court's ruling was manifestly arbitrary, unreasonable, or unfair, or if the court misapplied the law. *See People v. Chavez*, 2020 COA 80M, ¶ 8 ("A court abuses its discretion if it misinterprets or misapplies the law.").

¶ 15 But we review conclusions of law de novo, and if we determine that the district court applied an erroneous construction of law at the preliminary hearing, we review the record and determine whether the facts, when viewed in the light most favorable to the prosecution, would induce a reasonably prudent and cautious person to entertain the belief that the defendant committed the crime charged. *Hall*, 999 P.2d at 221. Thus, we must first consider whether the district court based its rulings on correct conclusions of law. As explained below, we conclude that it did and review the court's decision for abuse of discretion.

## B. *Vigil* Applies When Evaluating Substantial Risk of Protracted Loss or Impairment Under Section 18-1-901(3)(p)

¶ 16    The People contend that *Vigil* is inapplicable because it involved a finding of a substantial risk of *death* arising from an injury, *Vigil*, ¶¶ 30-31, while the present case concerns a substantial risk of protracted loss or impairment.  According to the People, extending *Vigil*'s application to the loss or impairment portion of the SBI definition is problematic because, while medical professionals can typically evaluate an injury and determine almost immediately if there's a substantial risk of death, a substantial risk of protracted loss or impairment is more intangible.  In support, they argue that risk can be substantial even if the chance that harm will occur is below fifty percent.  *See Hall*, 999 P.2d at 217.  We are unpersuaded.  Moreover, we regard the People's argument as further proof that parameters are necessary when evaluating the "substantial risk of protracted loss or impairment" prong of SBI under section 18-1-901(3)(p).

¶ 17    Although *Vigil* considered whether a substantial risk of *death* arose based on the victim's injury, and the issue before us is whether Cerisene's injuries involved a substantial risk of *protracted*

*loss or impairment* to the function of his eye, *Vigil*'s key principle remains: The determination of substantial risk is controlled by the *actual injury*, not by the hypothetical or commonly associated risks of the injury. *See Vigil*, ¶ 38. We therefore hold that *Vigil* applies when a court is asked to determine whether there is probable cause of SBI under section 18-1-901(3)(p) based on a substantial risk of protracted loss or impairment of the function of any part or organ of the body.

## C. The Prosecution's Evidence Didn't Establish Probable Cause that Cerisene's Injury Amounted to SBI

¶ 18     The People contend that the district court's findings "mistakenly equated the substantial risk of retinal detachment" with *Vigil*'s speculative language of "could," "might," and "generally does." Specifically, the district court found that "the evidence showed . . . Cerisene suffered traumatic iritis and the injury could have led [to] retinal detachment which may have led, if not properly treated, to a permanent substantial reduction of vision. But there was no evidence that . . . Cerisene['s] actual injury included retinal detachment." This construction, the People argue, is problematic because it focuses on whether there could have been a substantial

12

risk of retinal detachment rather than on the facts of the actual injury. But the district court's findings were consistent with the evidence that the prosecution presented.

¶ 19    Dr. Walters' description of the injury on the completed SBI form indicated that Cerisene received head trauma that resulted in traumatic iritis and that Cerisene reported flashes of light and floaters in his vision. Dr. Walters' description also noted that traumatic iritis had a significant risk of retinal detachment. And retinal detachment, if not treated promptly, *may* lead to a permanent substantial reduction of vision. These statements by Dr. Walters on the SBI form focus on the possible risks associated with traumatic iritis — retinal detachment; and if retinal detachment occurs and isn't treated promptly, it could lead to permanent substantial reduction of vision. The hypothetical risks weren't supported by evidence that Cerisene's injury, either at the time of the actual injury or later, carried a *substantial* risk of protracted loss or impairment to his eye, consistent with the definition of SBI. Thus, we cannot conclude that the district court abused its discretion by finding no probable cause of SBI existed because the prosecution's evidence focused on what *might* have happened *if*

13

Cerisene suffered retinal detachment and *if* he failed to receive proper treatment, when Cerisene's actual injury was only traumatic iritis. *See Vigil*, ¶ 31 (explaining the SBI definition "does not speak of bodily injury which 'could,' 'might,' or 'generally does' involve substantial risk of death").

¶ 20    The People also contend that Cerisene's injury met the definition of SBI because his head trauma (the injury in question) caused traumatic iritis (the actual injury), and he had a significant risk of retinal detachment, which involved a substantial risk of further loss or impairment associated with the actual injury. Thus, they claim, the prosecution met the probable cause standard because, as *Vigil* instructs, "the injury actually created by the defendant's actions is the crux for determining" SBI. According to the People, Cerisene's traumatic iritis, which resulted in symptoms of flashes of light and floaters reported in Cerisene's vision, met the "impairment of the function" of the eye definition under the SBI statute.

¶ 21    In contrast to *Vigil*, which considered the substantial risk of death that a stab wound could have caused if the knife had injured vital structures, the People claim that Dr. Walters' completed SBI

14

form isn't about the danger of being hit in the head but about actual injuries and impairment of function. Namely, Cerisene's injury was traumatic iritis that caused flashes of light and floaters in his left eye, which met the SBI standard because the plain and ordinary meaning of "impairment" is a "diminishment or loss of function or ability."

¶ 22    Although Dr. Walters noted on the SBI form that Cerisene "received trauma to the head that resulted in traumatic iritis and had a significant risk of retinal detachment with flashes of light and floaters reported in the vision," neither Cerisene nor Dr. Walters testified — and the prosecution presented no evidence — that the flashes of light and floaters impaired Cerisene's vision. There was also no evidence presented regarding how often the flashes and floaters occurred, how long the symptoms lasted, how much they impacted Cerisene's daily activities, how they affected Cerisene's eye function, or how traumatic iritis met the definition of SBI. Indeed, the prosecution didn't even offer evidence explaining traumatic iritis. Likewise, Gaffney testified that she didn't interview Dr. Walters or obtain a full medical report from him. Rather, the only evidence the prosecution presented in support of SBI was Dr.

Walters' SBI form indicating that the injury "may" lead to complications if left improperly treated.

¶ 23    The facts here stand in contrast to *People v. Duncan*, 2023 COA 122, where the victim suffered hearing loss for five months after the defendant struck the side of her face and perforated her eardrum.  In *Duncan*, medical testimony established not only that such an injury can cause hearing loss, but that the victim in fact experienced hearing loss for a sustained period, which was an injury that involved a substantial risk of "protracted loss or impairment of the function" of the victim's hearing under section 18-1-901(3)(p).  *Duncan*, ¶¶ 20-21.

¶ 24    No comparable showing was made here.  The prosecution's evidence didn't establish probable cause that traumatic iritis — the actual injury — either at the time of the injury or later, carried a substantial risk of protracted loss or impairment to Cerisene's eye, consistent with the definition of SBI.

¶ 25    The People are correct that the prosecution's burden is relatively low at the preliminary hearing stage, but even under this low standard, we cannot say that the district court erred by finding that the prosecution didn't establish probable cause that Cerisene's

injuries met the statutory definition of SBI. The prosecution didn't present sufficient evidence to establish probable cause that Cerisene's injuries involved a "substantial risk of protracted loss or impairment of the function of his left eye." *See People v. Tafoya,* 2019 CO 13, ¶ 14 ("A preliminary hearing is designed to provide a judicial determination as to whether probable cause exists to believe that the charged offense was committed by the defendant."); *Duncan,* ¶¶ 20-21.

¶ 26 Because the prosecution didn't establish probable cause that Cerisene suffered SBI, the district court didn't abuse its discretion by dismissing all counts containing an SBI element and all crime of violence counts related to the dismissed substantive charges.

### III. Disposition

¶ 27 We affirm the order and remand the case for further proceedings consistent with this opinion.

JUDGE PAWAR and JUDGE SULLIVAN concur.

17